*In re* MARRIAGE OF CHERYL L. DAVIS, n/k/a Cheryl L. Bievenue, Petitioner-Appellee, and DUANE A. DAVIS, Respondent-Appellant.

Fifth District   No. 5—96—0372

Opinion filed April 18, 1997.

Robert E. Shaw and David K. Overstreet, both of Mitchell, Neubauer, Shaw & Hanson, P.C., of Mt. Vernon, for appellant.

David M. Fahrenkamp, of Edwardsville, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The respondent-appellant, Duane A. Davis, and the petitioner-appellee, Cheryl L. Davis, n/k/a Cheryl L. Bievenue, were married on January 26, 1985. The parties had one child, Danielle Renee Davis, born August 28, 1985. The marriage was dissolved on February 7, 1989. The instant action was brought in order to increase child support due Cheryl from Duane. The circuit court increased the amount of child support and denied Duane's post-trial motions. Duane appeals the circuit court's order.

The relevant facts are as follows. Cheryl filed a petition for dissolution on February 7, 1989, and a judgment for dissolution was entered the same day. Since Duane was a dental student and unemployed, the judgment of dissolution reserved the issue of child support until Duane was employed. Duane began working as an independent contractor for Harold Martin, D.D.S., in Flora, Illinois, on January 7, 1991. On June 27, 1991, Cheryl filed a petition to establish support. The circuit court entered an order on August 21, 1991, ordering Duane to pay Cheryl child support commencing January 1991 in the amount of $260 per month. On June 26, 1992, the circuit court ordered Duane to pay child support to Cheryl in the amount of $400 per month commencing July 1, 1992.

On May 16, 1994, Duane purchased Jane Setzekorn's late

husband's dental practice and the building partnership interest that went along with the practice in Mt. Vernon, Illinois. In order for Duane to purchase the late Dr. James Setzekorn's practice, he was required to become a partner in the Dental Arts Clinic building partnership that includes three other dentists. The partnership is responsible for owning and maintaining the office facility and the dental equipment contained therein. Duane testified that the purchase of the building partnership interest was not an optional feature of acquiring Dr. Setzekorn's dental practice. Duane borrowed a total of $150,000 to buy the dental practice and the building partnership interest.

On December 21, 1994, Cheryl filed a petition to modify, seeking an increase in the amount of child support paid by Duane.

A hearing was held on Cheryl's petition on November 27, 1995. A review of the record shows that in 1994, Duane and his current spouse, Darla D. Davis, filed joint income tax returns. Duane reported business income of $48,135, a nonpassive depreciation loss of $18,999 on the purchase of his partnership interest, and interest income of $106. Darla reported $2,601 in wages. Based on these figures, Darla and Duane had a total income of $31,843. Duane calculated that he earned 92% of the total income. Duane also calculated that after deducting federal and state taxes and his own health insurance, his net income for child support purposes was $21,266.

At the time of the trial in this case, Duane's net income for 1995 was not fully known.

Cheryl has a bachelor of science degree in civil engineering, and at the time of the hearing, she was working on completing her master's degree. She is a registered professional engineer in Missouri. At the time of the hearing, Cheryl was employed by the United States Air Force as a program manager for an architectural and engineering contract at Scott Air Force Base. Cheryl testified that her gross income for 1994 was $42,020.41. Although Cheryl had been contributing to a retirement plan, she did not know its value. Although Cheryl prepared an affidavit of assets and liabilities, she admitted that the figures that she provided in the affidavit were merely estimates because she prepared it in the hallway immediately before she walked into the courtroom at the November 27, 1995, hearing.

Danielle was 10 years old at the time of the hearing. Cheryl testified that she spends an average of $150 per month on Danielle's clothing. Cheryl also stated that she pays $42.25 per month for Danielle to take gymnastic lessons once per week. Danielle was also involved in soccer, softball, and basketball. Cheryl testified that the

cost for each sport is $10 in addition to the equipment. She stated that the equipment can be costly depending on the type of shoes that she must buy. Danielle also takes piano lessons one time each week, and they cost $15 per lesson. Danielle also participates in band. Cheryl stated that Danielle is invited to birthday parties and that she must buy gifts for her friends. Cheryl testified that Danielle attends church camp that costs $170 per year, and that she attends girl scout camp that costs $20 to $30. Cheryl stated that she neither informed Duane about the cost of these activities nor asked him to contribute to their cost.

On January 12, 1996, the circuit court determined that Duane's net monthly income for child support purposes was $4,511 per month, and the court ordered Duane to pay Cheryl child support in the amount of $902 per month.

Duane filed a post-trial motion on February 9, 1996, requesting modification of the circuit court's January 12, 1996, order and requesting that the circuit court admit his 1995 tax returns into evidence. On February 16, 1996, Duane filed an amended post-trial motion with his revised 1995 tax returns attached thereto.

A hearing was held on Duane's amended post-trial motion on April 17, 1996. The circuit court denied Duane's amended post-trial motion and Duane's motion to file his 1995 tax returns with the court. More specifically, the circuit court's order states, in relevant part, as follows: "The Court *** notes that hearing on this matter was conducted on November 27, 1995, and the Court assumes that both parties, in particular the Respondent, submitted *** financial evidence up to and through November 27, 1995. The Court further notes that there was no continuance requested by Respondent of the November 27th date so as to have the hearing after the entire 1995 calendar year had expired. The Court also notes that at [the] time of hearing some eleven-twelfths of the year had expired and financial information for the month following the day of the hearing is not now relevant to be received into evidence during a post-trial motion."

Duane filed a timely notice of appeal on May 21, 1996.

The issue presented for review is whether the circuit court abused its discretion in granting Cheryl's petition to increase child support. Duane claims that the circuit court abused its discretion in the following ways:

(1) The trial court erred in ordering an increase in child support without making a threshold finding that there had been a substantial change in circumstances;

(2) The trial court abused its discretion in refusing to admit Duane's 1995 tax returns into evidence;

(3) The trial court erred in failing to deduct the depreciation expense/nonpassive loss of Duane's building partnership interest when determining Duane's net income for child support purposes;

(4) The trial court erred in failing to deduct Duane's health insurance premiums when determining Duane's net income for child support purposes; and

(5) The trial court erred in failing to deduct Duane's repayment of the income tax loan, student loans, and money spent on Danielle's behalf exclusive of gifts when determining Duane's net income for child support purposes.

■ Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) provides that a child support judgment such as the one in the instant case can be modified only "upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a) (West 1994). In order to satisfy this burden, the petitioning party must show that the supporting spouse has an increased ability to pay and the child receiving support has increased needs. *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 731 (1996). The fact that the child is older and the cost of living has risen is presumptive of an increase in the child's needs. *Pylawka*, 277 Ill. App. 3d at 731. The court can determine the amount of the increase in child support only after the threshold question of whether a substantial change in circumstances has occurred is answered. *Pylawka*, 277 Ill. App. 3d at 731.

■ The trial court must also consider the statutory guidelines set forth in section 505 of the Act when considering whether to modify child support payments. 750 ILCS 5/505 (West 1994). At the time of these proceedings, section 505 stated:

"(1) The Court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |

\* \* \*

(2) The above guidelines shall be applied in each case unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child in light of evidence including but not limited to one or more of the following relevant factors:

(a) the financial resources of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent." 750 ILCS 5/505(a)(1), (a)(2) (West 1994).

■ Section 505(a)(3) of the Act states:

" 'Net income' is defined as the total of all income from all sources, minus the following deductions:

(a) Federal income tax (properly calculated withholding or estimated payments);

(b) State income tax (properly calculated withholding or estimated payments);

(c) Social Security (FICA payments);

(d) Mandatory retirement contributions required by law or as a condition of employment;

(e) Union dues;

(f) Dependent and individual health/hospitalization insurance premiums;

(g) Prior obligations of support or maintenance actually paid pursuant to a court order; [and]

(h) *Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income,* medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts. The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." (Emphasis added.) 750 ILCS 5/505(a)(3) (West 1994).

It is the statutory definition that is to be used to determine net income, not the Internal Revenue Code. *Pylawka*, 277 Ill. App. 3d at 732.

■ Furthermore, a determination of the modification of child support lies within the sound discretion of the circuit court and will not be set aside absent an abuse of that discretion. *In re Marriage of Partney*, 212 Ill. App. 3d 586, 590 (1991). The factors to be considered in exercising that discretion are set forth in section 505(a)(2) of the Act. *Partney*, 212 Ill. App. 3d at 590. "Abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court." *Partney*, 212 Ill. App. 3d at 590.

Duane's main contention on appeal is that the circuit court erred in not allowing him to deduct from his gross income the depreciation expenses attributable to the real estate, building, and equipment comprising his one-quarter interest in the partnership, because they represent "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." 750 ILCS 5/505(a)(3)(h) (West 1994).

A review of the record shows that in order for Duane to purchase Dr. Setzekorn's practice, he was required to buy a one-quarter interest in the Dental Arts Clinic building partnership. Based on that purchase, Duane was able to show a depreciation expense/nonpassive loss of $18,999 on Schedule E of his 1994 tax return. The depreciation expenses were for the real estate, building, and equipment comprising Duane's one-quarter interest in the building partnership. At the time of the hearing on November 27, 1995, Duane estimated his depreciation expense/nonpassive loss to be $33,000 for 1995.

As we previously stated, the circuit court is required, when determining net income, to deduct "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." 750 ILCS 5/505(a)(3)(h) (West 1994). However, simply because an expense falls into the category of a debt repayment does not mean that it is necessarily deductible from gross income for child support purposes. Merely qualifying as a repayment of a debt is a necessary but not sufficient condition for deductibility under section 505(a)(3)(h). *Gay v. Dunlap*, 279 Ill. App. 3d 140, 148 (1996). Once this hurdle is overcome, the proponent of the deduction must also show that the debts being repaid are "reasonable and necessary expenses for the production of income." *Gay*, 279 Ill. App. 3d at 148.

■ We agree with the court in *Gay* that the word "necessary," as used in section 505(a)(3)(h), was intended to describe "those expenses outlaid by a parent with a good-faith belief his or her income would increase as a result, and which actually did act to increase income, or would have done so absent some extenuating circumstances." *Gay*, 279 Ill. App. 3d at 149. The term "reasonable" means " '[n]ot immoderate or excessive' [citation]; 'being or remaining within the bounds of reason: not extreme: not excessive' [citation]." *Gay*, 279 Ill. App. 3d at 149. The *Gay* court held that, in order to determine what is "reasonable," one must consider the relationship between the amount of the expense and the amount by which income is in good faith expected to increase as a result. "This definition implies the same expense could be reasonable in one context and not in another." *Gay*, 279 Ill. App. 3d at 149.

In 1991 and 1992, Duane worked as an independent contractor for another dentist. Duane's 1991 Form 1099 shows that his *gross* income was $34,789.52. Duane's 1992 Form 1099 shows that Duane's *gross* income was $56,866.25. Duane purchased the partnership, building, and equipment in May of 1994. Duane's 1994 tax return shows that his *gross* receipts were $93,663. Duane also testified that from January 1, 1995, through October 31, 1995, his *gross* receipts were $157,301.

Hence, there is no question that Duane's purchase of the dental practice and building partnership interest was a reasonable and necessary expense for the production of income.

■ Cheryl appears to claim that Illinois law does not allow depreciation expenses to be deducted from gross income in order to arrive at "net income" for child support purposes.

In *Posey v. Tate*, 275 Ill. App. 3d 822, 826 (1995), the court determined that depreciation is not income, but a return of capital. The *Posey* court stated: "To subject depreciation expense, which has been allowed as a deduction on a supporting parent's tax return, to child support would be to assess such support against capital instead of income. At the end of a capital asset's useful life, its productive capacity is exhausted." *Posey*, 275 Ill. App. 3d at 826-27. *Posey* stated that the useful life tables mandated by the Internal Revenue Service provide uniformity. This is particularly true when the straight-line method of depreciation is used, as opposed to an accelerated form, which could distort net income, denying a child proper support. *Posey*, 275 Ill. App. 3d at 827. The *Posey* court held that the deduction of the straight-line depreciation expense from net income by a taxpayer who is obligated to pay child support is fair and proper, where he has shown such deduction to be a "reasonable and necessary expense for the production of income" and that it is "subject to a specified repayment schedule, as contemplated by section 505(a)(3)(h)." *Posey*, 275 Ill. App. 3d at 827.

■ Since we have determined that Duane's depreciation deduction represents a reasonable and necessary expense for the production of income, we believe that the circuit court abused its discretion by not allowing it as a deduction. Hence, we are reversing and remanding this case to the circuit court with directions for it to determine whether Duane used straight-line depreciation or the accelerated form. Whatever form Duane actually used, he is entitled to deduct whatever the straight-line depreciation expense would have been for that particular year since he testified that his payments are subject to a specified repayment schedule. In so holding, we recognize that *Partney*, 212 Ill. App. 3d 586, is distinguishable from the instant case for the same reasons as stated in the *Posey* decision.

■ Next, Duane claims that the circuit court erred in failing to deduct his student loans, his tax loan, and money spent on Danielle's behalf, exclusive of gifts, when it determined his net income.

We agree with Duane that a student loan represents an expenditure "for repayment of debts that represent reasonable and necessary expenses for the production of income" and that the circuit court abused its discretion in failing to deduct those payments when it determined his net income. See 750 ILCS 5/505(a)(3)(h) (West 1994).

Additionally, defendant's exhibit 8 shows that Duane spent over $1,200 on Danielle in 1994, exclusive of gifts. According to section 505(a)(3)(h), Duane is entitled to have his net income reduced for "reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts." If Duane did, in fact, spend $1,200 on Danielle, exclusive of gifts, he is entitled to a deduction for that amount.

■ Duane also claims that he is entitled to a deduction for a loan that he secured through Associated Investment Corporation in order for him to be able to pay his 1992 income taxes. We disagree. We do not believe that this type of deduction was contemplated by the legislature when it enacted section 505(a)(3)(h). If Duane had properly withheld his income taxes for 1992, he would not have had to take out a loan for his taxes. To hold that his 1992 tax loan is deductible would be to allow a supporting parent to underwithhold for income tax purposes and perhaps use the additional money flowing into the household to purchase a vehicle or other items. The supporting parent could then borrow money to pay income taxes and then deduct that loan to arrive at "net income" for child support purposes. This result would be patently unfair, and we refuse to hold that it would be proper.

■ We agree with Duane that the circuit court abused its discretion in failing to deduct his health/hospitalization insurance premiums when it determined his net income. Pursuant to section 505(a)(3)(f), " 'Net income' is defined as the total of all income from all sources minus the following deductions: *** (f) Dependent and *individual health/hospitalization insurance premiums.*" (Emphasis added.) 750 ILCS 5/505(a)(3)(f) (West 1994). Duane testified that in 1994 he paid $210 in health insurance premiums for himself. Hence, the circuit court abused its discretion in failing to deduct that amount when it determined Duane's net income for child support purposes.

Although neither party mentions this particular issue, we note that it is very important that a review of Duane's 1994 income tax return shows that he overpaid his federal income taxes by $8,712. A review of Duane's Illinois income tax return shows that he overpaid the State of Illinois by $794. According to sections 505(a)(3)(a) and (b), net income is to be determined by subtracting *properly calculated withholding* from federal and state income taxes. In order to determine the proper method of computing net income, one must calculate the amount of federal and state income tax that a person actually pays by taking into consideration the disparity that exists between the amount of tax actually withheld and the tax eventually paid. See *Pylawka*, 277 Ill. App. 3d at 732-33. If a noncustodial parent

overwithholds, thereby overpaying income tax, that amount should be added back to his net income for the purpose of determining his support obligation pursuant to section 505(a) of the Act. *Pylawka*, 277 Ill. App. 3d at 733.

■ Finally, we note that Cheryl's attorney makes much of the fact that Duane pays his current wife a salary of $30,000 per year for services that she performs as a dental hygienist, bookkeeper, and in general, an office manager. Cheryl has claimed that Duane was overpaying his current wife in an effort to conceal his income for child support purposes. A review of the circuit court's order, however, shows the following: "This Court rejects Petitioner's argument that additional income should be attributed to respondent for determining child support based on the fact that Respondent is employing his current wife *** in his dental practice and on the allegation that the Respondent is overpaying her for the purpose of hiding his income so as to pay a smaller amount in child support. This Court finds there is no credible evidence to support this allegation." Because Cheryl failed to file a cross-appeal from the judgment attacking the trial court's finding that Duane was not attempting to conceal his income by overpaying his current wife, thereby reducing his income for child support purposes, we will not address it. See 155 Ill. 2d R. 343(b)(1).

In light of the foregoing considerations, we reverse and remand this case to the circuit court with directions that Duane's income for child support purposes be further reduced by the following items: (1) the figure representing straight-line depreciation on the real estate, building, and equipment comprising Duane's one-quarter interest in the building partnership; (2) the $210 representing Duane's health insurance premiums for himself; and (3) the amount of his actual payments on his student loans for the year. The circuit court should also consider Duane's tax refunds when determining his net income. In the interest of judicial economy, since we are reversing and remanding this case to the circuit court, we direct that the court also consider all of the income tax information that has been submitted from 1995. After taking all of the aforementioned factors into consideration, the court must then determine whether there has been a "showing of a substantial change in circumstances" warranting an increase in child support.

Reversed and remanded with directions.

HOPKINS and WELCH, JJ., concur.