STATE OF NEBRASKA ON BEHALF OF CAMDEN J. ELSASSER, APPELLEE, V. CHAD R. FOX, APPELLANT.

584 N.W.2d 832

Filed September 22, 1998.   No. A-97-021.

Joseph H. Murray, of Germer, Murray & Johnson, and Gregory C. Damman for appellant.

Loren L. Lindahl, Deputy Saunders County Attorney, for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

HANNON, Judge.

Chad R. Fox appeals from the order of the district court increasing his child support obligation for Camden J. Elsasser, arguing that the court erred in not deducting the monthly payment he is required to make on his student loan from his net monthly income in computing his obligation. We find that the court did not include a basic income and support calculation and wrongly ignored evidence of the income of Camden's mother, Dawn Elsasser. Moreover, we conclude that the court erred in failing to allow a deduction for Chad's monthly student loan payments. Accordingly, we affirm as modified.

## FACTUAL BACKGROUND

The facts are undisputed. On December 29, 1994, the district court entered a consent decree establishing that Chad is the father of Camden, born January 14, and ordering Chad to pay child support to Dawn in the amount of $50 per month, commencing January 1, 1995. The court also ordered Chad to name Camden as a beneficiary under any health and medical insurance policy available to him through his employer and to make certain payments in connection with Camden's birth.

On May 15, 1996, under Neb. Rev. Stat. § 43-512.12 (Reissue 1993), the Saunders County Attorney, representing the State of Nebraska on behalf of Camden, filed an application to modify Chad's child support obligation and to establish medical insurance coverage. The application alleged that Chad's income had increased substantially and that Chad may have medical insurance available through his employer. In his responsive pleading, Chad admitted that he was capable of furnishing more support and alleged that he had already procured medical insurance and had provided Dawn with evidence thereof. In an amended pleading, he alleged that he was responsible for student loans in the principal amount of approximately $17,000, for which he

was obligated to make monthly payments in the amount of $178.09. Chad alleged that such loans should be taken into consideration in computing his child support obligation.

The trial on the modification issue was held on December 9, 1996. Dawn testified that although she had previously received aid from Aid to Families with Dependent Children, she had recently obtained full-time employment, earning $7.10 per hour for 40 hours per week. Her testimony gave every indication that the job was permanent employment. During Dawn's direct examination, the State's attorney offered into evidence a photographic copy of the first pay stub she received from her new employment, showing her gross pay and the amounts withheld for income tax, et cetera. Chad's attorney objected to the exhibit as irrelevant, and for reasons we do not understand, the judge sustained the objection. At the time of the hearing, Dawn's wages would have translated into a monthly gross income of $1,230.

Chad testified that he is 24 years of age, that at the time of the decree in December 1994 he was a full-time college student, and that he graduated therefrom in May 1996. The record reflects that Chad attended college with the aid of part-time employment, some scholarships, help from his parents, and a student loan. In September 1996, he obtained full-time employment as a teacher in a public school in a small town, with gross pay of $1,974.16 per month. The record also reflects that he had supplied Dawn with medical insurance information.

Chad testified that the student loan was necessary for him to obtain the education he attained. Chad testified that the term of the loan was 10 years, beginning January 1996. A loan statement, dated January 8, 1996, reveals that Chad's principal balance was $17,219.02, that his monthly payment was $178.09, and that he was current in his payments on that loan. Income tax returns from the years 1994 and 1995 show that Chad made several thousand dollars a year in various jobs, some of which appear to be related to the education profession and others of which are typical of those engaged in by college students.

The parties did not file or introduce a basic income and support calculation, and the court did not follow paragraph C of the Nebraska Child Support Guidelines, which requires "[a]ll orders for child support, including modifications, must include

a basic income and support calculation worksheet 1, and if used, worksheet 2 or 3." We find in the transcript an unsigned journal entry wherein the court stated that since it sustained the objection to Dawn's evidence of income, it found her income to be $0 per month. Further, the court stated: "Under the circumstances of this case, I find it would not be reasonable [or] equitable to allow the deviation for student loan payments requested by [Chad]." The journal entry stated that the court adopted the "County Attorney's calculation B as the most appropriate calculation," and found that effective September 1, 1996, Chad's child support obligation should be increased to $319 per month.

The transcript also contains a formal order dated and filed on January 6, 1997, modifying the decree. In the order, the court found a "substantial change in circumstances" and, without disclosing any findings relative to either party's gross or net income, or allowable deductions, ordered Chad to pay $319 per month in child support, commencing September 1, 1996. The order also contains the usual directives regarding payment to the clerk, delinquent payments, medical insurance, et cetera.

## ASSIGNMENT OF ERROR

Chad argues that the court erred in computing his child support obligation because the court failed to deviate from the child support guidelines to account for his student loan. Chad, however, admits that there is a change in circumstances justifying an increase in support.

## STANDARD OF REVIEW

Modification of a dissolution decree, child visitation, and amount of child support are matters initially entrusted to the discretion of the trial court, whose decisions are to be reviewed on appeal de novo on the record and will be affirmed absent an abuse of discretion. *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997). Although in conducting its de novo review of such matters an appellate court reaches a conclusion independent of the trial court, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

As noted above, the parties did not see fit to file or introduce any worksheet disclosing their respective gross and net monthly incomes or the method of computing Chad's child support obligation under the guidelines. Paragraph C of the Nebraska Child Support Guidelines requires that all orders for child support, including modifications, must include a basic income and support calculation worksheet. See, also, *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994) (suggesting that such be incorporated into record). The court ignored this clear direction by failing to include such as part of its order. Such failures impose upon this court the unnecessary work of combing the record in order to determine the income and deductions mandated by the evidence, and thus the judicial resources of this state are wasted on needless duplication. The worksheets provide an efficient method of summarizing the findings or proposed findings from the evidence, as well as displaying computations, and the trial courts are required to use them under paragraph C. We do not understand why trial courts and litigants do not always use them. Furthermore, such worksheets enable efficient comparison of the arithmetic necessary in child support calculations.

As we were unable to view a worksheet, we did the necessary work and prepared our own worksheet. Unfortunately, we are unable to arrive at the exact amount of child support ordered by the trial court, even when we use what we understand to be the trial court's findings on Dawn's income and the nondeductibility of Chad's student loan payments. We find that the evidence on Chad's income and deductions, exclusive of the student loan payments, is not disputed and that a correct, although skeletal, worksheet is as follows:

| | | |
|---|---|---|
| Chad's gross monthly income: | | $1,974.16 |
| Less deductions: | | |
| Income taxes | $ 291.53 | |
| FICA taxes | 143.77 | |
| Health insurance | 94.83 | |
| Mandatory retirement | 143.13 | |
| Total deductions: | | - 673.26 |
| Monthly Net Income: | | $1,300.90 |

At a 100-percent contribution level, Chad's monthly obligation is $313.22. Again, this figure does not include a deduction for Chad's student loan and assumes that Dawn has no income.

We fail to understand why the trial court sustained Chad's objection to the introduction of Dawn's pay stub, as we cannot see why Dawn's new income status should not be considered. If the inclusion of her income made a significant difference under the guidelines, we would probably have included it in our computation on the basis of plain error. However, the worksheet we have prepared, which includes Dawn's gross and net incomes as ascertained from her testimony and the improperly excluded document, reveals that the effect on Chad's obligation would be minimal.

Under the evidence in the record, and not including any deduction for Chad's student loan payments and treating Dawn's income as $0, Chad should not have to pay more than $313.22 per month in child support. But the principal issue of this appeal is whether Chad should be allowed a deduction of $178.09 for the monthly student loan payment he must make. If Chad is allowed the deduction, his resulting child support obligation is $271.02 per month.

First of all, under the evidence in this case, it is clear that Chad incurred his student loan in order to obtain the education necessary to gain employment as a teacher. By setting the initial child support at $50 per month, the trial court made it possible for Chad to obtain his present income. Most courts recognize that fostering further education of young parents in such a fashion benefits the child throughout the child's life. It seems undesirable to undermine that policy by ignoring the fact that such students must later repay the student loans they incurred in the process.

The obligation of a person who has obtained an education financed through a student loan, also known as an education loan, to repay the loan is very real. Under 20 U.S.C. § 1078(b)(1)(E)(ii) (1994), the loan must be repaid in not more than 10 years commencing at the beginning of the repayment period, the latter of which is determined under § 1078(b)(7). However, if such loans are consolidated, the time for repayment of principal and interest may be extended, depending on the amount of the consolidated loans. See 20 U.S.C. § 1078-3 (Supp. II 1996).

Furthermore, as 11 U.S.C. § 523 (1994) reveals, student loans are not easily dischargable in bankruptcy proceedings:

> (a) A discharge under . . . this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—
>
> (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years . . . before the date of the filing of the petition; or
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

Additionally, we observe that Congress has recently amended the Internal Revenue Code to provide that the interest paid on educational loans may be deducted in calculating income tax. 26 U.S.C.A. § 221 (West 1997).

The laws controlling the repayment of student loans are so crafted that students availing themselves must realize that their real income after graduation will in fact be their earnings less the required monthly payments upon their respective school loans. We see no reason why the courts should not recognize the reality of the situation of so many young parents who have utilized education loans to obtain an education beyond high school. Neb. Rev. Stat. § 42-364.16 (Cum. Supp. 1996) provides in significant part:

> Child support shall be established in accordance with such guidelines, which guidelines are presumed to be in the best interests of the child, unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order.

"A judge may not satisfy his duty to act equitably toward all concerned, i.e., the parties and the children, by blindly following suggested guidelines." *Brandt v. Brandt*, 227 Neb. 325, 327,

417 N.W.2d 339, 341 (1988), *overruled on other grounds, Druba v. Druba*, 238 Neb. 279, 470 N.W.2d 176 (1991).

Child support under the guidelines is computed upon the basis of the net monthly income of the parents. In that process, deductions are allowed for fixed, nonavoidable obligations such as taxes, Social Security, health insurance, mandatory retirement, and child support for other children. Education loan payments are of the same nature as the deductions that are allowed, that is, they are fixed, legally unavoidable monthly payments, and they have the long-term effect of decreasing the former student's real income by the amount of the monthly payment. Unlike ordinary debts, an educational loan cannot, for most former students, be discharged in bankruptcy.

A court may deviate from the child support guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate. Nebraska Child Support Guidelines, paragraph C; *Phelps v. Phelps*, 239 Neb. 618, 477 N.W.2d 552 (1991). See, also, § 42-364.16. After a de novo review of the facts and circumstances of this case, we find that Chad's student loan should have been taken into account. It is undisputed that Chad was current in his child support payments and has complied with the terms of the consent decree. Moreover, Chad's student loan will unquestionably benefit Camden, both immediately and in the long run. Thus, we deduct Chad's monthly student loan payment of $178.09 from the net monthly income computed above of $1,300.90 to arrive at a net monthly income of $1,122.81. Chad's resulting child support obligation is $271.02, which we round to $271 per month.

## CONCLUSION

We conclude that the trial court abused its discretion in failing to deviate from the child support guidelines to take Chad's monthly student loan payment into account. The district court is therefore directed to decrease Chad's support obligation to $271 per month for the term of the 10-year loan, effective September 1, 1996.

AFFIRMED AS MODIFIED.

IRWIN, Judge, dissenting.

I respectfully dissent from the decision of the majority holding that the district court committed an abuse of discretion by

not deviating from the Nebraska Child Support Guidelines and allowing Chad a deduction for his monthly student loan payments in computing his net monthly income. There is no precedent for such an allowance, and there is currently no case law which mandates such an allowance. Under these circumstances, I simply cannot find an abuse of discretion.

The majority cites no authority for granting a deduction for student loan payments in computing a parent's child support obligation. My research reveals that there is practically no authority for such action and that there is no authority in Nebraska. In *In re Marriage of Davis*, 287 Ill. App. 3d 846, 679 N.E.2d 110 (1997), the court did grant such an allowance. However, the Illinois child support guidelines provide that a party is to be granted a deduction for " '[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income . . . .' " (Emphasis omitted.) 287 Ill. App. 3d at 852, 679 N.E.2d at 114. In Nebraska, we have no such language in our child support guidelines, nor can any other language in our guidelines be construed as granting such an allowance.

The trial court in the present case made a specific finding that "[u]nder the circumstances of this case . . . it would not be reasonable [or] equitable to allow the deviation for student loan payments requested by [Chad]." In order to find an abuse of discretion, it is necessary that the trial court's decision be clearly untenable and deprive a litigant of a substantial right or a just result. The majority does not clarify how this standard is met in the present case, and I do not believe that it is. To hold that the trial court committed an abuse of discretion in this case is tantamount to suggesting that despite the fact that student loan payments are not enunciated in the guidelines as a specific basis for deviation, failure to grant a deviation and allow a deduction when the student loan is incurred to enable a parent to obtain employment which will ultimately benefit the child during his life is, by itself, an abuse of discretion. The majority sets a potentially far-reaching precedent in this case by its holding.

Despite the conceded facts that student loans are often a necessary expense for a parent to obtain an education and achieve meaningful employment, that the education received as a result

of incurring the loans will ultimately benefit the child, and that the loans must be repaid and are difficult, if not impossible, to discharge, I do not believe that a trial court's failure to grant a deviation to allow a deduction for the amount of the monthly loan payments is an abuse of discretion. See *Jensen v. Bowcut*, 892 P.2d 1053 (Utah App. 1995) (holding that lower court did not abuse discretion by failing to grant deduction for student loan payments). See, also, *CSEA v. Lozada*, 102 Ohio App. 3d 442, 657 N.E.2d 372 (1995) (holding that referee erred in granting deduction for student loan payments). Although I would acknowledge that in a proper case, a trial court may well be justified in concluding that such a deviation from the guidelines is necessary for a just or appropriate result, the trial court's failure to grant such a deviation in the present case is not an abuse of discretion. The trial court's decision not to grant the deviation was in compliance with the current child support guidelines, and absent some modification of the guidelines, I would not find an abuse of discretion and would not grant this deviation on appeal.