ERICA J., APPELLEE, AND STATE OF NEBRASKA,
INTERVENOR-APPELLANT, V. DENNIS J. DEWITT, APPELLEE.
659 N.W.2d 315

Filed April 11, 2003. No. S-02-415.

Anthony R. Medina for intervenor-appellant.

Michael A. Klusaw for appellee Dennis J. Dewitt.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The State of Nebraska appeals from a judgment of the Douglas County District Court which adopted the findings of a district court referee concerning a child support modification.

## SCOPE OF REVIEW

◼ Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Gallner v. Hoffman*, 264 Neb. 995, 653 N.W.2d 838 (2002).

## FACTS

A decree was entered on December 29, 1993, pursuant to the Uniform Reciprocal Enforcement of Support Act, which found that Dennis J. Dewitt is the father of Natasha J., who was born May 9, 1991. Dewitt was ordered to pay $159.30 per month for her support and maintenance commencing January 1, 1994.

On December 15, 2000, the State, as intervenor, filed a petition for modification of child support. The petition alleged that

the Department of Health and Human Services (DHHS) had conducted a review of the decree pursuant to Neb. Rev. Stat. §§ 43-512.10 to 43-512.18 (Reissue 1998) and had determined that the current support obligation varied by more than 10 percent from the Nebraska Child Support Guidelines. The variation was alleged to be due to financial circumstances which had lasted at least 3 months and which were reasonably expected to last for an additional 6 months.

Dewitt denied that the child support obligation varied from the guidelines. He also requested a deviation from the guidelines based on the geographical difficulty of visitation with Natasha, who lives in Minnesota. The guidelines do not provide for a deviation based on the ease or difficulty of visitation, and the parties have not raised this issue on appeal.

After a hearing, the district court referee filed a report indicating that Dewitt worked for a baking company on a commission basis and earned an average of $695 per week in gross wages. At the time of the hearing, Dewitt lived with his wife and their 4-year-old daughter. Dewitt's wife testified that she earned $8.05 per hour as an assistant manager at a daycare.

In 1998, Dewitt and his wife began a repayment plan with the U.S. Bankruptcy Court for the District of Nebraska which required them to pay $200 per month. Two years remained on the plan at the time of the hearing. In his report, the referee apportioned the $200 bankruptcy obligation between Dewitt and his wife and concluded that $100 should be deducted directly from Dewitt's child support obligation.

The referee also determined hypothetical child support for Dewitt's 4-year-old daughter and applied that figure as an allowable deduction from Dewitt's gross earnings to determine the child support payable for Natasha. The referee then allowed a credit of $100 of the payment to the bankruptcy plan against the amount of monthly support in order to arrive at an adjusted child support obligation of $345.58 for Natasha.

Although the petition for modification was filed December 15, 2000, and the referee's report was not filed until November 26, 2001, the referee found that the bankruptcy, the lack of evidence as to savings or other assets, and the proposed increase made it inequitable to make Dewitt solely responsible for the delay by

awarding child support retroactively. The referee therefore recommended that the district court modify the decree of support by increasing Dewitt's child support obligation to $346 per month beginning November 1, 2001, and monthly thereafter until further order of the court.

The State filed an exception to the referee's report on December 3, 2001. On March 13, 2002, the district court overruled the State's exception and adopted the referee's report. The court ordered an increase in Dewitt's child support obligation to $346 per month beginning November 1, 2001, payable until Natasha reached the age of majority, married, died, or became emancipated or self-sufficient, or until further order of the court. The State timely appealed.

## ASSIGNMENTS OF ERROR

The State asserts that the district court abused its discretion (1) by giving Dewitt a direct credit against his child support obligation for his bankruptcy plan payment and (2) by ordering the modified child support obligation to be prospective rather than retroactive.

## ANALYSIS

The State first argues that the district court erred in adopting the referee's recommendation granting Dewitt a direct credit for payments to his bankruptcy plan in the amount of $100 per month. The State asserts that the referee's reliance on *State on behalf of Elsasser v. Fox*, 7 Neb. App. 667, 584 N.W.2d 832 (1998), is misplaced. The referee concluded that the bankruptcy plan payments are similar to the student loan payments in *State on behalf of Elsasser*.

In *State on behalf of Elsasser*, the district court refused to allow credit for student loan payments in calculating the amount of child support required. The Nebraska Court of Appeals disagreed, noting that deductions were allowed in child support calculations for fixed nonavoidable obligations such as taxes, Social Security, health insurance, mandatory retirement, and child support for other children. The court stated:

Education loan payments are of the same nature as the deductions that are allowed, that is, they are fixed, legally unavoidable monthly payments, and they have the long-term

effect of decreasing the former student's real income by the amount of the monthly payment. Unlike ordinary debts, an educational loan cannot, for most former students, be discharged in bankruptcy.

*Id.* at 674, 584 N.W.2d at 836.

The Court of Appeals reasoned that the student loan would benefit the child because the parent has obtained an education and that, therefore, the student loan should have been taken into account in the child support calculation. The court then deducted the monthly student loan payment from the net monthly income and calculated the child support accordingly.

The State argues that payments to a bankruptcy plan do not benefit a child throughout his or her life in the same manner as student loan payments. It argues that the minor child would be penalized for the noncustodial parent's financial irresponsibility.

We conclude that the district court erred in adopting the referee's report and recommendation concerning the child support payable by Dewitt and therefore abused its discretion in entering the order for increased support in the amount of $346 per month.

■ In *Sears v. Larson*, 259 Neb. 760, 612 N.W.2d 474 (2000), we held that paragraph C(5) of the guidelines allows a trial court in an appropriate case to deviate from the guidelines to allow a deduction from income based on a parent's student loan payment. Paragraph C of the guidelines provides that the guidelines shall be applied as a rebuttable presumption. However, pursuant to paragraph C(5), deviations from the guidelines are permissible "whenever the application of the guidelines in an individual case would be unjust or inappropriate." The guidelines allow deductions for taxes, Social Security, health insurance, mandatory retirement contributions, and child support for other children. Payments to a bankruptcy plan are not specifically provided for in the guidelines as a deduction or credit. See paragraph C(5).

■ The Court of Appeals has held that a payment to a bankruptcy plan in and of itself is not sufficient to rebut the presumption that the guidelines should be applied or to require a deviation from the guidelines to avoid an unjust result. See *Lebrato v. Lebrato*, 3 Neb. App. 505, 529 N.W.2d 90 (1995). In *Lebrato*, the father testified that he could pay no more than $700 per month for child support, in part because he was paying $500 per month to a

bankruptcy plan. Although the Court of Appeals did not specifically resolve the question, it noted that the father had been paying far more than was required into a voluntary retirement plan, making his testimony "less than convincing." See *id.* at 518, 529 N.W.2d at 98.

Other courts have considered the effect of bankruptcy plan payments in determining child support. The Montana Supreme Court reversed a modification order, finding that a deduction for bankruptcy payments was in error because it was not provided for under the state's guidelines. See *In re Marriage of Nikolaisen,* 257 Mont. 1, 847 P.2d 287 (1993). The Tennessee Court of Appeals found that the trial court had erred in allowing a monthly deduction for a bankruptcy payment that was not included as an available deduction in the state's guidelines. On remand, the trial court was directed to recalculate the husband's income without considering the bankruptcy deduction. See *Creson v. Creson,* No. 02A01-9801-CH-00002, 1999 WL 65055 (Tenn. App. Feb. 12, 1999).

In the present case, the district court adopted the referee's report, in which the referee concluded that the bankruptcy plan was comparable to a student loan and therefore was a fixed obligation. Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Gallner v. Hoffman,* 264 Neb. 995, 653 N.W.2d 838 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

From our de novo review of the referee's report, we conclude that the referee erred in allowing a $100 credit for the payments to Dewitt's bankruptcy plan. The referee was not justified in crediting $100 of the bankruptcy plan payment directly against the child support that was computed based upon the combined monthly net income of both parents. The district court erroneously adopted the recommendation by the referee concerning the bankruptcy plan payments, and we conclude that the court

abused its discretion. We therefore remand the cause to the district court for a recalculation of child support in accordance with this opinion.

We next address the State's claim that the modified support order should be applied retroactively. The application for modification was filed by the State on December 15, 2000. A responsive pleading was filed on February 20, 2001, and a certificate of readiness for hearing was filed on May 10. The matter was set for trial on November 13. The referee's report was then filed on November 26, which recommended that the increase go into effect on November 1, 2001. A hearing was held before the district court on January 15, 2002, and the court's order was filed on March 13.

The State argues that Dewitt has benefited from delays in the proceedings and that the district court abused its discretion in ordering the child support modification to become effective on November 1, 2001. The court adopted the referee's recommendation concerning the effective date of the modification. The referee found that it was inequitable to make Dewitt wholly responsible for the delay in the support determination by awarding the support retroactively.

 Absent equities to the contrary, the modification of child support orders should be applied retroactively to the first day of the month following the filing date of the application for modification. See *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002). In a modification of child support proceeding, the child and custodial parent should not be penalized, if it can be avoided, by the delay inherent in our legal system. *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001). In *Riggs,* we reiterated that the initial determination as to the retroactive application of the modification is entrusted to the discretion of the trial court. We recognized that in some cases, a noncustodial parent may not be able to pay retroactive support and meet current obligations.

In the present case, the delays do not appear to be the fault of any one individual. We conclude that the district court's determination to make the increase retroactive to the first day of the month of the hearing before the referee, or November 1, 2001, was not an abuse of discretion, and we therefore affirm that portion of the court's judgment.

## CONCLUSION

For the reasons set forth herein, we reverse the district court's judgment as to modification of Dewitt's child support obligation, and we remand the cause for a redetermination of such obligation. However, we affirm the remainder of the court's judgment, including that portion establishing November 1, 2001, as the effective date of the modification.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.