KELLY MACKE, APPELLEE, V.
EDDIE PIERCE, APPELLANT.
661 N.W.2d 313

Filed May 23, 2003.   No. S-02-983.

William R. Settles, of Lamson, Dugan & Murray, L.L.P., for appellant.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

### NATURE OF CASE

This is the second appearance of this case before this court. Kelly Macke sued Eddie Pierce, M.D., alleging that Pierce tortiously interfered with a business expectancy when Pierce disclosed to Burlington Northern Railroad Company (BNRR), Macke's prospective employer, findings Pierce made during a physical examination of Macke. After Pierce's disclosure, Macke's employment application with BNRR was disapproved. A jury returned a verdict in favor of Pierce. Prior to the entry of judgment on the jury verdict, Macke filed a motion for new trial, which was sustained by the district court. Pierce appealed. Because Macke's motion for new trial was premature, this court dismissed Pierce's appeal for lack of jurisdiction. See *Macke v. Pierce*, 263 Neb. 868, 643 N.W.2d 673 (2002). Thereafter, the district court entered a new order granting Macke's motion for new trial, from which Pierce now appeals. We reverse, and remand with the direction that the verdict and judgment entered thereon in favor of Pierce be reinstated.

### STATEMENT OF FACTS

Macke applied for employment with BNRR on February 13, 1995. As part of the application process, Macke underwent a preemployment physical with Richard Byrd, M.D. Byrd completed the physical; medically approved Macke for employment; and, with Macke's permission, forwarded Macke's medical history, including her history of scoliosis, to BNRR.

BNRR hired Macke as a probationary employee on April 3, 1995. Her position was as a "Maintenance of Way Laborer." Her

employment status was "at-will." According to the BNRR employment procedure, Macke's application could be "disapproved" for 60 days following her hiring. Macke completed several days of job training, and on April 7, she was furloughed.

On April 25, 1995, Macke saw Pierce with a complaint of severe neck pain. Pierce treated Macke conservatively with medication and restricted her to sedentary work. He apparently expressed concern to Macke about her ability to perform her proposed duties with BNRR, given her prior medical history. Additionally, on April 25, Pierce contacted BNRR's medical department and related Macke's medical condition and her restriction to sedentary work to one of BNRR's physicians.

On May 4, 1995, BNRR called Macke and told her to report for active duty. A short time later, BNRR called Macke back and advised her that she had been restricted to sedentary work by Pierce. Macke called Pierce to resolve the job assignment situation. The record suggests that Macke thereafter underwent a functional capacity evaluation (FCE) with a physical therapist to determine whether she could perform as a maintenance of way laborer with BNRR and that based on the FCE, the physical therapist assigned Macke new work restrictions, superseding those assigned by Pierce. The record further suggests that due to these new restrictions, Macke's BNRR supervisor did not feel that Macke could safely perform work as a maintenance of way laborer. Thereafter, Macke's BNRR employment application was "disapproved."

In 1996, Macke sued BNRR in federal district court under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (2000). In an unpublished memorandum opinion and order filed May 11, 1998, the federal district court granted BNRR's motion for summary judgment, concluding that due to her restrictions, Macke did not possess the requisite skills and abilities for the position of a maintenance of way laborer. The U.S. Court of Appeals for the Eighth Circuit affirmed the federal district court's grant of summary judgment. *Macke v. Burlington Northern R. Co., Corp.*, No. 98-2409, 1999 WL 88931 (8th Cir. Feb. 19, 1999) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 175 F.3d 1024 (8th Cir. 1999)).

While the federal suit was pending, on April 18, 1997, Macke filed suit against Pierce in state district court, alleging, inter alia,

that Pierce had breached his duty of physician-patient confidentiality. Macke failed to serve Pierce with process within 6 months, and the suit was dismissed.

On February 25, 1999, Macke filed the present action against Pierce, based on the theory that Pierce had tortiously interfered with Macke's valid business expectancy of employment with BNRR. Pierce filed two summary judgment motions. The first alleged that Macke's new lawsuit was governed by the 2-year professional negligence statute of limitations and was time barred, and the second alleged that because Macke could not perform the essential functions of the maintenance of way laborer position, as determined by the federal district court, Macke did not have a valid business expectancy as a matter of law. Both of these motions were denied by the district court. The district court granted, however, Macke's motions in limine, thereby ruling that evidence regarding her unsuccessful federal court litigation and her FCE were inadmissible during trial.

The case was tried to a jury commencing August 7, 2000, and on August 9, the jury returned a unanimous verdict in favor of Pierce. On August 11, Macke filed a motion for new trial, which the district court granted. Pierce appealed the district court's order. In *Macke v. Pierce*, 263 Neb. 868, 643 N.W.2d 673 (2002), we dismissed Pierce's appeal, due to the lack of an entry of judgment on the jury verdict prior to the filing of Macke's motion for new trial.

Following remand after appeal, the district court entered judgment on the jury verdict on July 8, 2002. On July 12, Macke renewed her motion for new trial on the sole ground that the jury's verdict was not sustained by sufficient evidence. On August 16, the district court granted Macke's motion for new trial. Pierce appeals.

## ASSIGNMENTS OF ERROR

On appeal, Pierce assigns five errors. Pierce claims, renumbered, that the district court erred (1) in sustaining Macke's motion for new trial; (2) in determining that Macke's present cause of action was not governed by the professional negligence 2-year statute of limitations; (3) in overruling Pierce's motion for summary judgment based upon the determination that Macke

could not perform the essential functions of the job as determined by the federal courts; (4) in excluding any evidence, failing to take judicial notice, and failing to instruct the jury regarding the determinations of the federal courts that Macke could not perform the essential functions of the job; and (5) in excluding evidence during trial relating to Macke's FCE.

Because we find merit in Pierce's claim that the district court erred by sustaining Macke's motion for new trial, we do not discuss the four remaining assignments of error.

## STANDARDS OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Bowley v. W.S.A., Inc.*, 264 Neb. 6, 645 N.W.2d 512 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Erica J. v. Dewitt*, 265 Neb. 728, 659 N.W.2d 315 (2003).

## ANALYSIS

*Tortious Interference With Business Expectancy: Unjustified Interference.*

For his first assignment of error, Pierce claims that the district court erred in granting Macke's motion for new trial. We agree.

As an initial matter, we note that there is some question as to the propriety of Macke's cause of action against Pierce based on tortious interference with a business expectancy. Specifically, Pierce argued at trial and again on appeal that Macke's claim against him sounds exclusively in professional negligence and that as a consequence, this case is barred by the professional negligence 2-year statute of limitations. See Neb. Rev. Stat. § 25-222 (Reissue 1995). Given our resolution of this appeal, we need not analyze this argument. See *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002) (stating appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it). Therefore, for purposes of this opinion, we

analyze the appeal based on principles surrounding tortious interference with a business expectancy.

In determining whether the district court abused its discretion in granting Macke's motion for new trial, it is important to set forth the elements of a cause of action for tortious interference with a business relationship or expectancy. In *Huff v. Swartz*, 258 Neb. 820, 825, 606 N.W.2d 461, 466 (2000), we identified those elements as follows:

> "'(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.'"

(Quoting *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274 (1995).) In *Huff*, we observed that the Restatement (Second) of Torts § 766 (1979) describes a cause of action similar to that which we have recognized for tortious interference with a business relationship or expectancy. Under the Restatement, *supra* at 7, liability may be imposed upon one who "intentionally and improperly interferes with the performance of a contract." We further noted that the Restatement, *supra*, § 767 at 26-27, lists the following seven factors to consider in determining whether interference with a business relationship is "improper":

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

In *Huff*, we concluded that these seven factors should be used for determining whether interference is "'unjustified'" under our law. See 258 Neb. at 829, 606 N.W.2d at 468. We also quoted with approval the Restatement, *supra*, § 767, comment *b.*, which provides:

"The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors."

*Huff*, 258 Neb. at 829, 606 N.W.2d at 468.

In summary, whether an act amounts to tortious interference under Nebraska law depends, in part, on whether that act was "unjustified." To determine if an act was unjustified, we have adopted the seven factors set forth in the Restatement, *supra*, § 767, which include the actor's motive and the interests sought to be advanced by the actor. In this connection, as noted above, we have recognized that whether a particular action is "unjustified" depends upon a " 'choice of values' " and a determination as to whether " 'the conduct should be permitted without liability, despite its effect of harm to another.' " *Huff v. Swartz*, 258 Neb. 820, 829, 606 N.W.2d 461, 468 (2000). We analyze this appeal by reference to the factors outlined in *Huff*.

*Evidence of Alleged "Unjustified" Interference and Jury's Verdict in Favor of Pierce.*

Following a jury verdict in favor of Pierce, Macke filed a motion for new trial based upon Neb. Rev. Stat. § 25-1142(6) (Cum. Supp. 2002), which provides that a verdict "shall be vacated and a new trial granted on the application of the party aggrieved for any of the following causes affecting materially the substantial rights of such party: . . . (6) that the verdict . . . is not sustained by sufficient evidence or is contrary to law." The district court sustained the motion. For reasons explained below, this ruling was in error and requires reversal.

During the trial, the district court instructed the jury in language which closely follows our opinion in *Huff*. With respect to the jury's evaluation of the evidence as to whether "an act of interference [was] unjustified," in instruction No. 11, the court identified the following factors:

1. The nature of [Pierce's] conduct;

2. [Pierce's] motive;

3. The interests of [Macke] with which [Pierce's] conduct interferes;

4. The social interests in protecting the freedom of action of [Pierce] and the contractual interests of [Macke];

5. The proximity or remoteness of [Pierce's] conduct to the interference; and

6. The relations between the parties.

With regard to the application of these factors, the district court instructed the jury in instruction No. 11 as follows:

The determination of whether an interference is unjustified depends upon a comprehensive appraisal of these factors. And the decision is whether it was unjustified under the circumstances - that is under the particular facts of the individual case, not in terms of rules of law or generalizations.

The issue in each case is whether the interference is unjustified or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved the conduct should be permitted without liability, despite its effect of harm to another.

Neither party objected to or challenged this instruction on appeal.

In support of her claim that Pierce's "interference" was "unjustified," and therefore the jury's verdict was in error and required a new trial, Macke relies upon the following trial testimony from Pierce:

Q There was, Doctor, no medical duty that justified what you did, that justified contacting Burlington Northern; isn't that right?

[Pierce:] Once again, I can just state that my train of thought was that I was concerned about her going out and injuring herself on the heavy manual labor job since she had neck pain.

Q There was no medical duty that would have justified violating physician/patient confidentiality; isn't that right?

A No. In retrospect, I should not have violated that physician/patient confidentiality rule.

In her brief, Macke also relies on Pierce's testimony in which she claims Pierce "agree[d] with the American Medical Association's statement on physician-patient confidentiality . . . which prohibits disclosure of patient information under all but a very few discrete circumstances . . . none of which applied to [Macke's] visit." Brief for appellee at 37. Macke claims that "[b]ased on this *underlined underline* *uncontroverted* evidence, [Macke] met her burden of proof on this element . . . ." (Emphasis in original.) *Id.*

We disagree with Macke's characterization of the significance of Pierce's testimony and further disagree that the evidence was uncontroverted that Pierce's actions were "unjustified." Although Pierce does not challenge that his disclosure of Macke's medical condition to BNRR violated the duty to maintain physician-patient confidentiality, such breach standing alone does not establish liability under Macke's theory that Pierce tortiously interfered with a business expectancy.

The record shows that Pierce testified as follows:

Q Well, did you ever think that what you were doing might cause [Macke] to lose her job?

[Pierce:] That was not my intention at all.

Q Did you ever think that what you were doing might cause her to lose her job, Doctor?

A I did not think that at the time, no.

. . . .

Q Doctor, what was you[r] motive in calling [BNRR's physician]?

A My thinking at the time was that I didn't want her to have a further cervical neck injury, further injury on the job.

Q Did you want her to have a period of time to heal before she had to go to work on the track?

A If someone presents with severe neck pain, she needed time to heal, yes.

Q Did you have any interest at all in seeing Ms. Macke disqualified from her job?

A No.

Q Did you have any interest at all in making sure that [BNRR] disqualified her from employment?

A No.

. . . .
Q And it's your position that that's why you called, you didn't want her to get hurt; is that right?
A Yes.

Our review of the trial record leads us to conclude that there was ample evidence which supported the jury's verdict. As such, the jury's verdict in favor of Pierce was sustained by sufficient evidence. See *Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999). In evaluating the evidence, there was sufficient evidence for the jury to have found Pierce's action in contacting BNRR was motivated by protecting his patient from harm, and therefore, his communication with BNRR was not "unjustified." Consistent with the jury instruction, there was sufficient evidence by which the jury could have found that Pierce's telephone call to BNRR relating Macke's medical condition and her restriction to sedentary work was in the "nature" of ensuring that Macke avoided subsequent injury, rather than an intentional act to deprive Macke of employment.

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Bowley v. W.S.A., Inc.*, 264 Neb. 6, 645 N.W.2d 512 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Erica J. v. Dewitt*, 265 Neb. 728, 659 N.W.2d 315 (2003). While our scope of review of a trial judge's decision granting a motion for new trial is limited to an abuse of discretion standard, we have stated that a trial judge does not have "unbridled discretion" to grant a new trial on a verdict with which he or she disagrees. *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 115, 629 N.W.2d 511, 525 (2001). Given the record in this case, we conclude that there was sufficient evidence to support the jury's verdict and that the district court abused its discretion by depriving Pierce of the jury verdict in his favor when it sustained Macke's motion for new trial. Such abuse of discretion requires reversal.

## CONCLUSION

The district court's order granting Macke's motion for new trial is reversed, and the cause is remanded to the district court with directions to reinstate the jury verdict and the July 8, 2002, judgment in favor of Pierce.

REVERSED AND REMANDED WITH DIRECTION.

STEPHAN, J., not participating.