*In re* MARRIAGE OF DARLENE K. DEMATTIA, Petitioner-Appellee, and JAMES DEMATTIA, Respondent-Appellant.

Fourth District   No. 4—98—0401

Argued December 17, 1998.—Opinion filed January 28, 1999.

Michelle R. Mosby-Scott (argued), of Rhonda Glenn Law Offices, of Bloomington, for appellant.

Robert M. Travers (argued), of Fellheimer, Travers & Engelman, Ltd., of Pontiac, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In February 1997, petitioner, Darlene K. Demattia, requested the court dissolve her marriage to respondent, James Demattia. In December 1997, the parties entered into a parenting agreement (Agreement) whereby, among other things, they agreed to joint custody of their three children with Darlene as primary physical custodian. On January 2, 1998, the court entered a judgment of dissolution of marriage incorporating the Agreement's terms and awarding Darlene monthly child support of $714 pursuant to section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (see 750 ILCS

5/505(a)(1) (West 1996)). James appeals, arguing the trial court erred when it refused to deviate downward from the statutory guideline. We disagree and affirm.

## I. BACKGROUND

The parties were married in June 1985 and had three children during their marriage: Bradley (August 14, 1987), Alex (October 12, 1992), and Eric (September 29, 1994). In February 1997, Darlene filed a petition for dissolution of the marriage. At this time, both parties worked at the Dwight Correctional Center. Darlene worked the first shift from 7 a.m. to 3 p.m., Tuesday through Saturday, while James worked the second shift from 3 p.m. to 11 p.m., Monday through Friday. The parties earned substantially similar incomes.

In June 1997, Darlene petitioned the court for temporary relief, requesting custody of the children and child support. Her petition alleged James moved out and the children lived with her in the marital residence. In July 1997, the court granted Darlene temporary custody and child support, withholding $756 per month from James' paycheck.

At a November 1997 hearing, the parties presented the court with the Agreement. Besides dividing the marital property, the Agreement provided the following: (1) the parties had joint custody of the children; (2) Darlene was the primary physical custodian; (3) each party had equal authority over the children's education, religion, and health; (4) each party had equal access to the children's medical and educational records; and (5) James was required to maintain the children's medical insurance and share all medical expenses equally.

Further, the Agreement provided James with the following visitation rights: (1) Tuesday through Friday from 6 a.m. to 2 p.m., which accommodated Darlene's work schedule; (2) every other weekend from 10 a.m. on Saturday to 7 p.m. on Sunday; and (3) the Saturdays Darlene worked from 6 a.m. to 4 p.m. Holidays and birthdays were divided equally and each party received 30 days of vacation time throughout the year.

After revealing the details of the Agreement to the court, James argued his child support obligation should be less than the statutory guideline based on his role as day-care provider four days per week. The court concluded James' extended visitation time did not require a downward deviation from the statutory guideline. James' monthly gross income was $3,034, with monthly deductions for taxes, social security, insurance, and union dues totaling $802.40. Thus, the court set James' child support at 32% of his net income of $2,231.60, or $714 per month. See 750 ILCS 5/505(a)(1) (West 1996). The court divided tax exemptions for the children equally between the parties.

In December 1997, the parties filed the Agreement with the court. In January 1998, the court entered the judgment of dissolution of marriage, incorporating its rulings with the Agreement. In February 1998, James filed a motion to reconsider, which included updated financial information. In April 1998, the court denied the motion. This appeal followed.

## II. ANALYSIS

On appeal, James contends his child support obligation should be reduced below the statutory guideline because he and Darlene both provide the children's primary care. See *In re Marriage of Duerr*, 250 Ill. App. 3d 232, 238, 621 N.E.2d 120, 125 (1993); *In re Marriage of Keown*, 225 Ill. App. 3d 808, 813, 587 N.E.2d 644, 647 (1992); *In re Marriage of Flemming*, 143 Ill. App. 3d 592, 599, 493 N.E.2d 666, 671 (1986). He asserts the court erred as a matter of law by refusing to deviate downward from the 32% statutory guideline (see 750 ILCS 5/505(a)(1) (West 1996)).

Because James initially contends the court erred as a matter of law, we review this contention *de novo*. See *Gay v. Dunlap*, 279 Ill. App. 3d 140, 145, 664 N.E.2d 88, 92 (1996). We find the law enunciated in *Duerr*, *Keown*, and *Flemming* inapplicable because those cases involve instances when each party was the primary custodian for at least one of their children. In these "split custody" cases, the Act's statutory guidelines are not necessarily applicable. See *Keown*, 225 Ill. App. 3d at 813-14, 587 N.E.2d at 647-48. Here, however, the parties agreed to joint custody of the children with Darlene as the primary physical custodian. She is primarily responsible for the children and the guidelines apply.

■ ■ Section 505 of the Act creates a rebuttable presumption the specified percentage of a noncustodial parent's income represents an appropriate child support award. See *In re Marriage of Charles*, 284 Ill. App. 3d 339, 346-47, 672 N.E.2d 57, 63 (1996). This presumption cannot be negated *unless* compelling evidence shows reason for the deviation. See *In re Marriage of Stanley*, 279 Ill. App. 3d 1083, 1085, 666 N.E.2d 340, 341 (1996). Relevant factors for the court to consider include, but are not limited to, (1) the financial resources of the children; (2) the financial resources and needs of the custodial parent; (3) the children's standard of living during the marriage; (4) the physical and emotional condition of the children and their educational needs; and (5) the financial resources and needs of the noncustodial parent. See 750 ILCS 5/505(a)(2) (West 1996); *In re Marriage of Phillips*, 244 Ill. App. 3d 577, 594, 615 N.E.2d 1165, 1178 (1993).

■ Section 505 does not include a provision addressing joint

custody cases when the noncustodial parent receives extended visitation rights with the children. *Cf. Remson v. Remson*, 672 So. 2d 409, 414 (La. App. 1996) (applying La. Rev. Stat. Ann. § 9:315.8E (West 1991)); *Gray v. Gray*, 885 S.W.2d 353, 356 (Tenn. Ct. App. 1994) (applying Department of Human Service regulation § 1240—2—4—.02— 7 of the Tennessee Child Support Guidelines); *Terpstra v. Terpstra*, 588 N.E.2d 592, 596 (Ind. App. 1992) (applying Indiana Child Support Guideline 1). The trial court may certainly consider James' extended visitation rights, but the law does not mandate a downward deviation nor was the court obligated to make an express finding regarding this issue. See *Charles*, 284 Ill. App. 3d at 347, 672 N.E.2d at 63 (the trial court is only required to express findings when it deviates from the guidelines). Accordingly, the court did not err as a matter of law.

■ James also contends the court abused its discretion because the evidence supported a downward deviation of the statutory guideline. In his brief, James cites facts argued by his attorney during the November 1997 hearing. These facts were apparently introduced as evidence during the July 1997 temporary custody hearing, but a transcript of the hearing was not included in the appellate record. Any doubts arising from this incomplete record are resolved against James. See 155 Ill. 2d R. 321; *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 546-47, 662 N.E.2d 1248, 1258 (1996).

James alleges he is saving Darlene day-care expenses by watching the children four days per week. He further contends he provides primary care for the children 10 out of 14 days for at least 8 hours per day. Therefore, his child support obligation should have been reduced below the statutory guideline. A similar downward deviation of the statutory guideline was found not to be an abuse of discretion. See *In re Marriage of Reppen-Sonneson*, 299 Ill. App. 3d 691, 695, 701 N.E.2d 1159, 1162 (1998).

A departure from the guidelines must be supported by the record. See *In re Marriage of Meyer*, 140 Ill. App. 3d 1031, 1036, 489 N.E.2d 906, 910 (1986). Here, the record is insufficient to require such a deviation. The evidence revealed (1) both parties earn substantially the same income; (2) Darlene has assumed the mortgage on the marital residence, compensating James for his interest in the property; and (3) Darlene is solely responsible for maintaining the children's standard of living. Further, two of the children attend school nine months out of the year, thereby reducing James' perceived burden considerably.

According to James' original financial affidavit, his monthly expenses, including child support, were approximately $2,000 while his monthly net income was found to be $2,231.60, thereby leaving him

$231 per month for additional expenses. Nothing in the record indicates a downward deviation from the guideline was warranted based on financial hardship suffered by James. *Cf. Phillips*, 244 Ill. App. 3d at 595, 615 N.E.2d at 1178. In fact, Darlene paid James $5,500 for his interest in the marital residence when she assumed the mortgage. Moreover, although James conceivably incurs some additional costs taking care of the children, these costs are not shown to be excessive or uncommon. Rather, these appear to be normal costs associated with a joint custody arrangement.

We also note day-care expenses would not necessarily be included in James' child support payments. See *In re Marriage of Serna*, 172 Ill. App. 3d 1051, 1054, 527 N.E.2d 627, 629 (1988). In *Serna*, this court stated the trial court did not abuse its discretion when it required the noncustodial father to pay half of the child care costs in addition to child support as determined under the statutory guidelines. The *Serna* court noted the two parties had substantially the same income and day care was necessary because both parties worked full-time. See *Serna*, 172 Ill. App. 3d at 1054, 527 N.E.2d at 629. The trial court could have increased James' support obligation to compensate for any day care Darlene required.

Although both parties are financially responsible for supporting the children (see *In re Marriage of Maczko*, 263 Ill. App. 3d 991, 994, 636 N.E.2d 559, 562 (1992)), Darlene is the party responsible for maintaining their standard of living. The record indicates James' child support payments, in addition to Darlene's income, goes toward the mortgage, utilities, food, car payments, and the children's clothing. No evidence exists Darlene is receiving a financial windfall from the child support payments. James is potentially saving himself half of the costs of day care Darlene would have incurred had James been unable to provide day care four days per week. See *Serna*, 172 Ill. App. 3d at 1054, 527 N.E.2d at 629.

We do not suggest a trial court could never deviate downward from the guidelines based on the noncustodial parent's extended provision of care for his or her children. We do not seek to discourage noncustodial parents from having substantial contact with their children. The benefit a noncustodial parent receives from having substantial involvement with his or her children cannot be measured by dollars. There should not be an *automatic* deduction in child support because a noncustodial parent has the opportunity to spend substantial time with the children and fulfill a parental responsibility. Caring for one's own children is not day care nor is it a chore for which to be compensated. Our decision is not a criticism of respondent for asking this interesting question, but we decline the invitation to

add a new layer of complexity to custody and support decisions. Our decision is limited to the facts in this case.

Courts should encourage arrangements such as this one. Both parties have cooperated well, their separation appears amicable, and their work schedules accommodate their children's lifestyle. The children's best interests are served by spending substantial time with each parent. So long as the parties remain cooperative, joint custody is an appropriate parenting arrangement. Accordingly, we find the trial court's decision was not contrary to the manifest weight of the evidence. See *Gay*, 279 Ill. App. 3d at 144-45, 664 N.E.2d at 92.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.