JEFFREY L. ROPER, Plaintiff-Appellant, v. ALYSON L. JOHNS, n/k/a Alyson L. Bennett, Defendant-Appellee.

Fifth District   No. 5—02—0778

Opinion filed January 28, 2004.

Michael R. Glenn, of Nokomis, for appellant.

William F. Trapp, of Brown, Hay & Stephens, of Springfield, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The parties, who were never married, are the parents of Christopher L. Johns. The father appeals from an order increasing his child support obligation. He argues that the trial court (1) erred by deducting only a portion of his student loan payments in calculating his net income for child support purposes and (2) abused its discretion by not ordering child support in an amount below the statutory guideline amount. We affirm in part, reverse in part, and remand with directions.

## I. BACKGROUND

Christopher L. Johns was born on May 2, 1991. His parents, Aly-

son L. Johns, now known as Alyson L. Bennett, and Jeffrey L. Roper (Jeff), were in high school at the time. On January 18, 1996, Jeff filed a petition to establish paternity. He sought visitation with the child but asked that the court reserve a determination of child support because he was then a full-time student in his junior year at the University of Illinois. Alyson, who is two years older than Jeff, had apparently finished her education by this time and was working as a licensed physical therapist assistant. It is not clear from the record what level of education Alyson attained.

On July 29, 1996, the court entered a judgment declaring Jeff to be Christopher's father and incorporating the visitation schedule to which the parties had agreed. On April 4, 1997, the court entered an agreed order providing that Jeff would pay to Alyson the following: (1) child support in the amounts of $20 per week during the school year and $200 per month during the summer months, (2) half of the cost of Christopher's health insurance premiums and medical expenses not covered by insurance and 40% of the cost of day care, and (3) $6,635 for a portion of Alyson's pregnancy and childbirth expenses and Jeff's obligations for child support and Christopher's medical expenses from his birth until the entry of the order.

In May 1997, Jeff graduated from the University of Illinois with a bachelor's degree in business administration. That fall, he enrolled at Washington University School of Law. While attending law school, Jeff decided to enroll in a combined degree program, which meant that he would earn both a law degree and a master's degree in business administration and finish in four years instead of three. In May 2001, Jeff graduated from law school. Prior to graduation, he had accepted a position with Deloitte and Touche, which was to pay him $75,000 per year.

On June 18, 2001, Alyson filed a petition for a modification in child support, seeking an increase based on the increase in Jeff's income. On August 12, 2002, the trial court held a hearing in the matter. By that time, Jeff had been laid off from his position with Deloitte and Touche, although he has since found another position. The primary issue at the hearing was whether Jeff's student loan payments would be deducted from his income as payments on a debt that was reasonable and necessary for the production of income. See 750 ILCS 5/505(a)(3)(h) (West 2002). Jeff testified that his total student loan debt was $180,000 and his minimum monthly payments on the loans were $2,100 per month. The record is not clear about how much of the debt represents loans Jeff took as an undergraduate at the University of Illinois and how much represents law school loans. Presumably, at least a portion represents undergraduate loans, while the bulk of the debt was incurred attending Washington University.

In an August 23, 2002, docket entry, the court determined Jeff's child support obligations. The court noted that most of the benefit of Jeff's advanced degrees would be realized after Christopher had reached the age of majority and that it would therefore be unjust to deduct the entire debt from child support payments. The court ruled that Jeff was entitled to a deduction for a portion of his student loan payments, however. For one period of Jeff's child support obligations—December 1, 2001, until August 23, 2002—the court deducted $375 per month in calculating Jeff's income. Using this deduction, the court found that Jeff's income for that period for child support purposes was $2,014.56 biweekly, and the court ordered Jeff to pay child support for that period in the amount of $403 biweekly, representing the statutory guideline amount of 20% of that figure (750 ILCS 5/505(a)(1) (West 2002)). On October 25, 2002, the court entered a written order incorporating the findings from its docket entry. This appeal followed.

## II. ANALYSIS

■ The trial court enjoys broad discretion in determining the modification of child support, and we will not overturn its decision unless it results from an abuse of discretion. *In re Marriage of Davis*, 287 Ill. App. 3d 846, 852, 679 N.E.2d 110, 115 (1997). Jeff's primary contention on appeal is that the trial court abused its discretion in deducting only a portion of his student loan debt in calculating his net income. As an alternative to this argument, he contends that the court abused its discretion by not ordering child support in an amount below the statutory guideline amount of 20%. We may reject this argument at the outset. The statutory guidelines create a rebuttable presumption that child support in the guideline amount is appropriate. *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 902, 713 N.E.2d 259, 263 (1999). The proponent of a deviation from the guidelines bears the burden of producing evidence that compelling reasons exist to justify the deviation. *Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747, 752, 690 N.E.2d 1052, 1056 (1998). We need not determine whether Jeff's evidence of his debt burden was sufficient to overcome this presumption, because he did not request that the trial court deviate from the guidelines in setting support. A trial court does not abuse its discretion by failing to deviate *sua sponte* from the presumptively appropriate guidelines. We now turn to Jeff's argument that the trial court erred in calculating his income.

■ The statutory definition of "net income" for child support purposes is the total of the noncustodial parent's income from all sources, less certain specified deductions. 750 ILCS 5/505(a)(3) (West 2002). The only such deduction relevant here is the deduction for the

repayment of loans for "reasonable and necessary expenses for the production of income." 750 ILCS 5/505(a)(3)(h) (West 2002). This court has recognized that student loans fall within this category. *In re Marriage of Davis*, 287 Ill. App. 3d at 854, 679 N.E.2d at 116. Although we held that the loans at issue in *In re Marriage of Davis* were deductible in their entirety (see *In re Marriage of Davis*, 287 Ill. App. 3d at 856, 679 N.E.2d at 117), our opinion should not be read as holding that student loan payments will always be completely deductible. Like other debt payments deductible under this provision, student loans must be both reasonable and necessary for the production of income. See *In re Marriage of Davis*, 287 Ill. App. 3d at 853, 679 N.E.2d at 115 ("simply because an expense falls into the category of a debt repayment does not mean that it is necessarily deductible").

Jeff does not contend otherwise. Rather, he contends that the court erred in finding his loan payments to be only partially deductible. He argues that once the court found that the debt Jeff had incurred was reasonable and necessary at all, it was obliged to find that the loan payments were deductible in their entirety. We disagree. This court has previously found a debt incurred for the production of income to be only partially deductible. *In re Marriage of Heil*, 233 Ill. App. 3d 888, 892, 599 N.E.2d 168, 171 (1992). There, we held that a noncustodial father's mortgage payments on a hunting lodge that he used to entertain business clients were only partially deductible. We found that only half the debt incurred in buying the lodge was reasonable and necessary for the production of income, because the father used the lodge for personal purposes approximately half the time. *In re Marriage of Heil*, 233 Ill. App. 3d at 892-93, 599 N.E.2d at 171. We see no principled reason to treat a student loan debt differently from other debt in this regard.

Moreover, our examination of the purposes to be served by allowing the deduction in the context of student loan payments convinces us that trial courts must have the flexibility to find that a partial deduction is warranted. Because Illinois courts have not previously had the occasion to consider this issue in depth, we look to the decisions of other jurisdictions. In *State ex rel. Elsasser v. Fox*, 7 Neb. App. 667, 584 N.W.2d 832 (1998), cited by Jeff, the Nebraska Court of Appeals explained that policy as follows:

> "[I]t is clear that [the noncustodial father] incurred his student loan in order to obtain the education necessary to gain employment as a teacher. By setting the initial child support at $50 per month, the trial court made it possible for [him] to obtain his present income. *Most courts recognize that fostering further education of young parents in such a fashion benefits the child throughout the*

*child's life.* It seems undesirable to undermine that policy by ignoring the fact that such students must later repay the student loans they incurred in the process." (Emphasis added.) *Fox*, 7 Neb. App. at 672, 584 N.W.2d at 835.

In *Fox*, the father's student loan debt was low, only $178 per month, and it financed an undergraduate degree that enabled the father to begin his professional career as a teacher. Further, the father finished his education and began working as a teacher when his child was two years old. The reasonableness of the debt incurred was not at issue. In subsequent cases, however, Nebraska courts have held that deductions for student loans are not unlimited. See *Noonan v. Noonan*, 261 Neb. 552, 564-65, 624 N.W.2d 314, 324-25 (2001) (a trial court abused its discretion in allowing a deduction for student loan payments where the noncustodial parent presented no evidence of the loan terms, the total amount owed, whether he could reduce his monthly payments, or how he had spent the loan proceeds), citing *Sears v. Larson*, 259 Neb. 760, 612 N.W.2d 474 (2000).

Another court to consider the reasons for allowing parents to deduct their student loan payments in determining net income for child support purposes was the Minnesota Court of Appeals in *In re Marriage of Svenningsen*, 641 N.W.2d 614 (Minn. App. 2002). Unlike its Illinois counterpart, the Minnesota statute there at issue contains a provision limiting to 18 months a child support reduction based on debt incurred for expenses necessary for the production of income. *In re Marriage of Svenningsen*, 641 N.W.2d at 615-16, citing Minn. Stat. § 518.551, subd. 5(f) (2000). Whether and to what extent the debt incurred was reasonable and necessary was not at issue. Rather, the court had to determine whether the provision, which stated that any *further* reduction of child support due to debt repayments was limited in duration to 18 months, was applicable where the *only* reduction was for the father's student loan debts. *In re Marriage of Svenningsen*, 641 N.W.2d at 616. Nevertheless, we find relevant and persuasive the court's discussion of the public policy behind allowing but limiting the deduction. The court stated, "[C]hildren are entitled to benefit from increases in a parent's income, particularly as those increases benefit the parent's standard of living." *In re Marriage of Svenningsen*, 641 N.W.2d at 616. The court went on to explain that it found the time limit applicable, given this policy, because "[d]epriving the child of the full benefit of [the parent's] increased income and standard of living for 10 years while he repays his long-term debt is not in the child's best interest." *In re Marriage of Svenningsen*, 641 N.W.2d at 616.

We agree with the Nebraska court that fostering the education

of a young parent such as Jeff, by considering student loans in the child support determination, benefits the child. But we also agree with the Minnesota court that the benefit to the child is elusive if the child is not allowed to share in the parent's increased income, because the difference in support is all but eliminated by such a deduction. Our statutory requirement that a debt incurred for the production of income be reasonable and necessary in order to be deductible is itself a compromise between these competing policy concerns. It would undermine this policy to hold that deductibility must be an all-or-nothing proposition. The instant case provides an excellent example of the flaw inherent in such an inflexible rule. As we will discuss in more detail later, the court below apparently found that it was reasonable and necessary for Jeff to pursue a law degree but that, in light of the circumstances, it was not reasonable and necessary for him to incur the level of debt that he did. Were the trial court to find the debt deductible in its entirety, it would prevent Christopher from sharing in the benefits of Jeff's enhanced earning potential. On the other hand, were the court to find that the debt could not be deducted at all, it would discourage parents in Jeff's position from pursuing any higher education that could benefit themselves and their children financially, as well as in less tangible ways. Neither of these results is desirable in light of the policy embodied in our child support statute. Thus, we conclude that courts must have the flexibility to find student loan debt partially deductible.

■ With these principles in mind, we next consider whether—and to what extent—the debt Jeff incurred in pursuing his education was reasonable and necessary. Illinois courts have defined "necessary" expenses as " 'those expenses outlaid by a parent with a good-faith belief his or her income would increase as a result, and which actually did act to increase income[ ] or would have done so absent some extenuating circumstances.' " *In re Marriage of Davis*, 287 Ill. App. 3d at 853, 679 N.E.2d at 115, quoting *Gay v. Dunlap*, 279 Ill. App. 3d 140, 149, 664 N.E.2d 88, 95 (1996). We have defined "reasonable" as not immoderate, extreme, or excessive considering the relationship between the amount of the expenditure and the amount by which the parent's income is expected to increase as a result. *In re Marriage of Davis*, 287 Ill. App. 3d at 853, 679 N.E.2d at 115, citing *Gay*, 279 Ill. App. 3d at 149, 664 N.E.2d at 95.

In the instant case, Jeff's combination of degrees enhanced his earning capacity and was, therefore, necessary for the production of income. However, we do not believe that the expenditure was reasonable—at least not in its entirety—for two reasons. First, it was entirely possible for Jeff to attain those degrees without incurring such an

overwhelming level of debt. He could have found a job using the skills he had acquired with his undergraduate business degree and either attended law school part time while working full time or waited a few years between college and law school so he could pay down some of his undergraduate loans and save money towards his law school tuition and expenses. Further, he could have applied to law schools with lower tuition. Second, we agree with the trial court that the amount of debt incurred was excessive in relation to the extent to which Jeff's income was enhanced.

We note that the trial court did not expressly state that it found the amount of the debt to be unreasonable. Rather, the court expressed its rationale in terms of fairness to Christopher. Citing the Fourth District Appellate Court's decision in *Gay v. Dunlap*, Jeff contends the court erred in so doing. In *Gay*, the court stated as follows:

> "A trial court decision about whether to apply the statutory guidelines involves carefully balancing many factors—not limited to those listed in the statute. [Citation.] The determination of net income, on the other hand, should be a straightforward, rigorous process." *Gay*, 279 Ill. App. 3d at 146, 664 N.E.2d at 93.

The court further observed:

> "[T]he purpose of subsection (a)(3) (including subsection (h)) is simply to define the noncustodial parent's net income. (750 ILCS 5/505(a)(3)(h) (West 1992).) Subsection (a)(3) is not intended to determine what the 'fair' amount of child support is, nor does it have anything to do with how much child support is to be paid. All it does is define net income. Expenses which it would be improper to deduct under subsection (a)(3) can still play a role in a trial court's decision regarding departure from the statutory guidelines." *Gay*, 279 Ill. App. 3d at 147-48, 664 N.E.2d at 94.

We believe that Jeff cites this language out of context. The court made these observations in holding that business expenses that were not for the repayment of debt could not be deducted under this provision. *Gay*, 279 Ill. App. 3d at 148, 664 N.E.2d at 94. In rejecting the father's argument that the business expenses must be deductible in fairness to the father, the court merely pointed out that the father could have asked the court to consider these business expenses as a reason to deviate below the guideline amount (see 750 ILCS 5/505(a)(2) (West 1992)).

Significantly, the *Gay* court went on to analyze whether the father's lease payments on a car used for business purposes were properly deductible, and the court explained the requirement that debts incurred must be "reasonable":

> "[W]e find [that] it applies to the relationship between the amount of the expense and the amount by which income is in good faith

expected to increase as a result. This definition implies [that] the same expense could be reasonable in one context and not in another. For instance, a mechanic's $10,000 debt for the purchase of a full set of tools—through which the parent expects his or her income to increase by $7,500 per year—may be reasonable, in contrast to a debt for the same amount incurred on the expectation of earning $5 to $10 per week doing odd jobs for neighbors." *Gay*, 279 Ill. App. 3d at 149, 664 N.E.2d at 95.

Thus, we read the opinion as recognizing the need for some discretion in determining income for child support purposes. See also *In re Marriage of Takata*, 304 Ill. App. 3d 85, 92, 709 N.E.2d 715, 721 (1999) (noting that trial judges must exercise some discretion in determining income).

■ Moreover, in considering the benefit to Christopher that might flow from Jeff's education, the trial court in fact analyzed the relationship between the amount of the debt incurred and the extent to which Jeff's education enhanced his earning capacity, which is precisely the analysis required to determine if the loan amount was reasonable. The fact that the order does not expressly state that its analysis was to determine what portion of the debt was reasonable and necessary for the production of income is not dispositive.

Nor do we find inappropriate the court's focus on the relationship between the debt burden and Jeff's enhanced earnings during Christopher's childhood. As we have stated, the courts of other jurisdictions that have considered the effect of student loan payments on child support have expressly considered the benefit to the child in finding the loan payments deductible. In Illinois, too, courts have an obligation to set child support in accordance with the best interest of the child. *In re Marriage of Sheetz*, 254 Ill. App. 3d 695, 698, 627 N.E.2d 154, 157 (1993). In determining whether the level of debt accrued was reasonable, Jeff's responsibility for supporting Christopher is inherently relevant. See *Stockton*, 305 Ill. App. 3d at 901, 713 N.E.2d at 263 (parents are jointly responsible for the support of their child). An expenditure that might be reasonable for a student who does not have the responsibility of a young child may not be reasonable for a parent. We seriously question whether any custodial parent would have felt free to remain a full-time student for eight years. Thus, we believe that the trial court's analysis of the relationship between the debt and the increase in Jeff's income while he continues to be responsible for Christopher's support was proper.

Having concluded that the trial court properly found that only a portion of Jeff's debt was reasonable and necessary for the production of income, we must decide whether the court correctly determined the

amount. The court noted that there is very little guidance for determining an amount that was commensurate with the benefit of the debt, and we agree. The court determined that, were Jeff to spread out his loan payments over a 40-year career, he would have to pay $375 per month. This calculation creates a fiction wherein the burden of the debt is spread out evenly among the paychecks enhanced by the education. In doing so, it arrives at a proportion that represents the relationship of the debt to the benefit gained by the degree, as meaningfully as possible. Given the lack of definitive methods for determining what amount of the loan was reasonable, we find that the trial court properly exercised its discretion in adopting the method it did.

Although we approve of the method employed by the trial court in determining how much of the loan payments may be deducted, we agree with Jeff that its calculations fail to account for the interest on the loans. The statute does not distinguish between interest and principal on loan payments that are deductible. Although Jeff failed to provide the detailed loan statements requested by Alyson's attorney, the record contains enough evidence for us to estimate the actual amount of principal and interest that Jeff will pay, at least with respect to some of Jeff's loans.

Jeff submitted the following evidence with respect to his student loans: (1) a statement showing a $98,789.51 consolidated loan with an estimated total payment amount of $223,267.20, (2) a letter from the AFSA Data Corp. (AFSA) informing him that $2,126.57 in interest had accrued on a $9,500 loan, (3) a finance charge disclosure statement from AFSA indicating that he had taken a $3,750 loan to be paid over 10 years at 2% interest for an estimated total of $4,140.52, (4) a finance charge disclosure statement from AFSA showing a $4,000 loan to be paid over 10 years at 5% interest for an estimated total of $5,091.01, (5) a billing statement from the United States Department of Education's direct loans program indicating a loan with a remaining balance of $16,442.70 and monthly payments of $189.28, (6) a monthly billing statement from Sallie Mae indicating a remaining balance of $46,215.98 and monthly payments of $959.09, and (7) a promissory note for a $2,000 Federal Perkins Loan to be repaid at 5% interest.

We reiterate that it was Jeff's burden, as the proponent of the deduction, to submit evidence that would allow the court to determine the proper amount to deduct for loan payments. See *In re Marriage of Minear*, 181 Ill. 2d 552, 560, 693 N.E.2d 379, 382-83 (1998) (without sufficient evidence of the basis for a claimed deduction, a trial court acts within its discretion in refusing to deduct the expense). Thus, we

need only consider those repayment obligations of which Jeff has presented sufficient evidence.

Jeff's evidence demonstrates that he will make payments totaling $223,267.20 for the consolidated loans and $4,140.52 and $5,091.01 for the two AFSA loans for which he submitted finance charge disclosure statements. With respect to the remaining four loans, it is impossible to calculate Jeff's total payments because we do not know the repayment period for each. Jeff has shown, however, that he will be paying at least the principal amount on all four loans, plus $2,126.57 in accrued interest on the $9,500 AFSA loan. Considering only these proven repayment obligations, our calculations yield a total of $308,783.98.

We note that we are considering only the interest that Jeff will actually pay on his loans, not the interest that might be hypothetically charged for a 40-year repayment period. This is because the trial court's formula is merely designed to determine a portion of his actual debt that is reasonable and necessary. Applying the trial court's formula, we arrive at $7,719.60 per year that is deductible ($308,783.98 divided by 40)—which means that Jeff is entitled to a deduction of $643.30 per month, $296.90 per two-week pay period, or $148.45 per week in calculating his income for child support purposes.

The trial court's written order of October 2002 orders Jeff to make a one-time payment of $1,227, representing 20% of a sign-on bonus he received from Deloitte and Touche, and pay $438 biweekly as child support from August 2001 (when he began receiving his salary from Deloitte and Touche) through November 2001 (when he began to repay his loans). These amounts are unaffected by our holding. The court also ordered Jeff to pay $403 biweekly from December 1, 2001, to August 23, 2002, and $105 per week for the period during which he received unemployment compensation. On remand, the trial court should calculate child support for these periods considering the interest Jeff has actually demonstrated he will pay on the loans. The court will also need to set child support based on the salary Jeff receives in his new position.

## III. CONCLUSION

For the foregoing reasons, we affirm the order of the trial court in part, but we reverse in part and remand with directions to recalculate child support as stated.

Affirmed in part and reversed in part; cause remanded with directions.

GOLDENHERSH and HOPKINS, JJ., concur.