2015 IL App (2d) 140345
No. 2-14-0345
Opinion filed September 28, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF JENNIFER HILL, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 03-D-72 |
| | ) | |
| RONALD M. HILL, JR., | ) | Honorable |
| | ) | Marcy L. Buick, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1 The respondent, Ronald M. Hill, Jr., appeals from the December 30, 2013, order of the circuit court of Kendall County, which set child support retroactive to June 17, 2012, and awarded a contribution to the attorney fees incurred by the petitioner, Jennifer Hill. We affirm.

¶ 2                                  BACKGROUND

¶ 3 The parties were married in 1994 and divorced in 2004. They had three children together. Jennifer was designated as the children's primary residential custodian. The judgment reserved Ronald's child support obligation and instead provided that he was to pay $4,250 per month for unallocated family support until September 2008. Then, Ronald's child support obligation would be established based on Ronald's income and the statutory guidelines. Despite

the above language in the judgment, Ronald's child support obligation was not recalculated after September 2008. Instead, he continued to pay $4,250 per month.

¶ 4     On July 17, 2012, Jennifer filed a petition to reset child support. On August 13 and 14, 2013, the trial court conducted a hearing on Jennifer's petition.

¶ 5     Ronald testified that his father and his father's business partner, Lee Larson, owned J.B. Industries. J.B. Industries creates tools for use in air conditioner repair. Ronald's father and Larson also owned a building complex on Farnsworth Avenue in Aurora that J.B. Industries used (the Farnsworth property). In 2005, Ronald and a friend, Jeffrey Cherif, purchased 100% of the stock in J.B. Industries for $7 million and the Farnsworth property for an additional $7 million. The deal was financed by Ronald's father and Larson. The loans were to be repaid by 2016. Ronald and Cherif did not put any money down to buy the property.

¶ 6     Each month, Ronald and Cherif paid approximately $140,000 to Ronald's father and Larson to repay the loans. Ronald and Cherif were able to pay down the loans from $14 million to $5 million in 6 years. Ronald and Cherif have the ability to modify the loan agreement and prepay the remainder of the loans without penalty. In 2011, the terms of the loans were modified to allow Ronald to be paid an annual salary of $500,000.

¶ 7     In 2008, Ronald and Cherif borrowed funds and purchased, for $1.2 million, a home on Grand Bahama Lane in Riviera Beach, Florida. Ronald and Cherif stated on their corporation's tax returns that the Florida residence was a corporate asset.

¶ 8     Ronald acknowledged that he owned a home in Naperville and a vacation home in Ingleside. In 2011, he purchased an additional home in Naperville for his mother-in-law to live in. She paid him $1,000 a month, which was insufficient to cover the mortgage and property taxes. Ronald also acknowledged that he owns seven cars.

¶ 9    Both parties retained experts to determine Ronald's annual income for child support purposes.   Howard Ellison, Jennifer's expert, testified that Ronald's income was $653,878. Ellison arrived at that amount, in part, by giving Ronald a credit for the interest he paid on his business loans.  Ellison's report indicated that the average amount of interest that Ronald paid to purchase J.B. Industries and the Farnsworth property from 2009 to 2011 was $78,959.   John Coffey, Ronald's expert, testified that Ronald's income was $189,531.   He arrived at that amount, in part, by giving Ronald a credit against his income for both the principal and the interest he paid on his business loans.  Coffey's report indicated that the average amount of principal and interest that Ronald paid from 2009 to 2011 on his business loans was $434,039.

¶ 10    Jennifer testified that she earned $35,000 per year up until recently when her job was eliminated and she became unemployed.  She still lived in the former marital residence, which was in a state of disrepair because she was not able to afford maintenance and upkeep.  She did not have a working computer in the home.  The only vacations she had taken with the children had been paid for by her parents or her old boyfriends.

¶ 11    On December 30, 2013, the trial court entered its ruling, finding that, based on Ronald's increased income and the children's increased needs, there had been a substantial change in circumstances that warranted an increase in child support.  The trial court found that Ellison's determination of Ronald's income was reasonable.  However, the trial court found that Ellison should not have granted Ronald deductions against his income for certain depreciation expenses as well as the expenses associated with the Florida residence and the residence Ronald was renting to his mother-in-law.  As such, the trial court concluded that Ronald's net income was $826,478.  The trial court rejected Ronald's arguments that he should be allowed to deduct additional money for his repayment of business loans, finding that the "astronomical money

amounts Ronald was paying annually towards his purchase of both the stock in J.B. Industries, LLC as well as the Farnsworth property" were not necessary and therefore not reasonable. The trial court further found that "the apparent accelerated payment schedule leaves very little money for the payment of Ronald's child support obligations."

¶ 12    After determining Ronald's income, the court set Ronald's child support obligation at 28% of his net income pursuant to the statutory guidelines: $231,413.84 per year ($19,284.48 per month). The trial court found that a downward deviation from that amount was not appropriate, because (1) the children were not living the lifestyle they would have had if the parties had stayed married and (2) Ronald would still have approximately $600,000 per year in income to spend after paying child support. The child support obligation was retroactive to June 17, 2012, the date Jennifer filed her petition.

¶ 13    Further, the trial court found that Jennifer did not have the financial resources to pay her attorney fees and that Ronald did. The trial court additionally found that the fees Jennifer had alleged in her petition for payment of fees were reasonable. The trial court therefore ordered that Ronald pay Jennifer's fees of $49,025.04.

¶ 14    Following the trial court's ruling, Ronald filed a timely notice of appeal.

¶ 15                                ANALYSIS

¶ 16    Ronald's first contention on appeal is that the trial court erred in calculating his net income by not deducting the loan payments that he necessarily and reasonably incurred in order to purchase J.B. Industries and the Farnsworth property.

¶ 17    At the outset, we note that the parties dispute the appropriate standard of review for Ronald's first contention. Ronald contends that our review is *de novo* while Jennifer insists that the proper standard of review for a child support award is abuse of discretion. We agree with

Jennifer. See *In re Marriage of Davis*, 287 Ill. App. 3d 846, 852 (1997) (the trial court enjoys broad discretion in determining the modification of child support, and we will not overturn its decision unless it results from an abuse of discretion). The cases Ronald relies on are distinguishable as they address what constitutes income under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (750 ILCS 5/505(a)(3) (West 2012)) and not whether repayment of a loan is reasonable and necessary. See *In re Marriage of McGrath*, 2012 IL 112792 (addressing whether funds regularly withdrawn from payor's savings account are considered income for child support purposes); *In re Marriage of Lindman*, 356 Ill. App. 3d 462 (2005) (addressing whether disbursements from petitioner's IRA were "income" for purposes of calculating net income under section 505 of the Dissolution Act). As we will discuss further below, a trial court's determination as to what constitutes a reasonable and necessary expense necessarily requires the trial court to exercise some discretion.

¶ 18    Turning to the merits of Ronald's first contention, we first note that the statutory definition of "net income" for child support purposes is the total of the noncustodial parent's income from all sources, less certain specified deductions. 750 ILCS 5/505(a)(3) (West 2012). Relevant here is the deduction for the repayment of loans for "reasonable and necessary expenses for the production of income." 750 ILCS 5/505(h) (West 2012). "Necessary" describes "those expenses outlaid by a parent with a good-faith belief his or her income would increase as a result, and which actually did act to increase income, or would have done so absent some extenuating circumstance." *Gay v. Dunlap*, 279 Ill. App. 3d 140, 149 (1996). "Reasonable" means not extreme or excessive. *Davis*, 287 Ill. App. 3d at 853. In order to determine what is reasonable, one must consider the relationship between the amount of the expense and the amount by which

income is in good faith expected to increase as a result. *Id.* The definition of reasonable implies that the same expense could be reasonable in one context and not in another. *Id.*

¶ 19 In determining what expenses are reasonable and necessary, a court may properly conclude that such expenses are only partially deductible from one's income. *Roper v. Johns*, 345 Ill. App. 3d 1127 (2004). In *Roper*, the father (Jeff) had incurred $180,000 in student loans to attend college and law school. He sought to have his student loan payments deducted from the income he would have available to pay child support for his son Christopher. The trial court ruled that only part of the loans was deductible. *Id.* at 1130. In affirming, the reviewing court considered cases from other jurisdictions and then discussed conflicting policy considerations and the appropriateness of finding only part of those loans deductible. *Id.* at 1131-32. The reviewing court explained:

"We agree with the Nebraska court that fostering the education of a young parent such as Jeff, by considering student loans in the child support determination, benefits the child. But we also agree with the Minnesota court that the benefit to the child is elusive if the child is not allowed to share in the parent's increased income, because the difference in support is all but eliminated by such a deduction. Our statutory requirement that a debt incurred for the production of income be reasonable and necessary in order to be deductible is itself a compromise between these competing policy concerns. It would undermine this policy to hold that deductibility must be an all-or-nothing proposition. The instant case provides an excellent example of the flaw inherent in such an inflexible rule. *** [T]he court below apparently found that it was reasonable and necessary for Jeff to pursue a law degree but that, in light of the circumstances, it was not reasonable and necessary for him to incur the level of debt that he did. Were the trial court to find

the debt deductible in its entirety, it would prevent Christopher from sharing in the benefits of Jeff's enhanced earning potential. On the other hand, were the court to find that the debt could not be deducted at all, it would discourage parents in Jeff's position from pursuing any higher education that could benefit themselves and their children financially, as well as in less tangible ways. Neither of these results is desirable in light of the policy embodied in our child support statute. Thus, we conclude that courts must have the flexibility to find student loan debt partially deductible." *Id.* at 1132-33.

¶ 20 We believe that the court's reasoning in *Roper* as to student loans applies equally to the loans Ronald incurred in this case. The loans Ronald incurred have clearly benefitted himself financially, and thus potentially his children as well. However, if the loans were completely deductible, then Ronald's children would not be able to share the benefits of Ronald's enhanced earnings that have resulted from the loans. Indeed, Ronald acknowledges that, if the loans were fully deductible, the children would receive child support that was commensurate only to the amount that they were receiving before he assumed the loans in 2005. We therefore believe that it was appropriate for the trial court to find that the loans were only partially deductible.

¶ 21 Here, in adopting Ellison's report, the trial court did exactly that. Ellison testified that in determining Ronald's income he deducted the interest that Ronald paid on his loans for his business investments. Ellison's report indicated that the average amount of interest that Ronald paid from 2009 to 2011 was $78,959. As such, Ronald received a credit for that amount. In rejecting Coffey's report, which gave Ronald a credit for both the principal and the interest that he paid on his business investment loans (an average of $434,039 from 2009 to 2011), the trial court concluded that Ronald was entitled to only a partial deduction. Based on the circumstances of this case, we cannot say that the trial court's decision constituted an abuse of discretion.

¶ 22    We note that Ronald complains that the trial court gave him even fewer deductions against his income than Ellison had. Specifically, the trial court declined to give Ronald credit for (1) his business-related depreciation, (2) expenses related to the Florida residence, and (3) the property in Naperville that he was renting to his mother-in-law. The trial court explained that it was not going to award Ronald a deduction for the business-related depreciation when Ronald did not request such a deduction. As to deductions for the investment properties, as noted above, the trial court was not obligated to give Ronald deductions for all of his investments. See *id*. Based on the record before us, we cannot say that the trial court's refusal to grant Ronald additional deductions against his income constituted an abuse of discretion.

¶ 23    In determining that the trial court did not abuse its discretion in setting Ronald's income, we find Ronald's reliance on *In re Marriage of Tegeler*, 365 Ill. App. 3d 448 (2006), and *Davis*, 287 Ill. App. 3d 846, to be misplaced. In *Tegeler*, the reviewing court determined that the father should be able to deduct from his income his day-to-day operating expenses for running a farm. *Tegeler*, 365 Ill. App. 3d at 455. In *Davis*, the reviewing court found that the father could deduct depreciation expenses related to his purchase of a partnership interest in a dental practice. *Davis*, 287 Ill. App. 3d at 848-49. Neither the *Tegeler* court nor the *Davis* court found that the father was trying to manipulate his income and expenses so as to lower his child support obligations. Conversely, here the trial court specifically found that Ronald had needlessly accelerated his repayment of the loans, leaving him very little money for the payment of his child support obligations. As noted above, whether expenses will be found deductible depends on the context of how those expenses were incurred. Again, based on the record, we cannot say that the trial court abused its discretion in determining that Ronald was not entitled to deductions for all the expenses he had incurred in purchasing J.B. Industries and the Farnsworth property.

¶ 24    We also find Ronald's reliance on *In re Marriage of Freesen*, 275 Ill. App. 3d 97 (1995), and *McGrath*, 2012 IL 112792, to be unpersuasive.  Ronald argues that both cases stand for the proposition that "[n]either passive income nor non income assets are to serve as a basis for calculating or paying child support."  He therefore contends that the bulk of his income should not have been considered for child support purposes.  Neither case supports Ronald's argument. In *Freesen*, the reviewing court concluded that the trial court did not abuse its discretion in excluding from the husband's income $50,000 that he had earned in passive income.  *Freesen*, 275 Ill. App. 3d at 104.  Thus, the *Freesen* court clearly implied that it is within the trial court's discretion to include or exclude one's passive income in calculating his or her net income.

¶ 25    *McGrath* is inapplicable as that case addressed whether the father's withdrawals of money from a savings account could be considered part of his net income.  *McGrath*, 2012 IL 112792, ¶ 10.  The supreme court held that the father's withdrawals were not income, because the money at issue already belonged to the father.  *Id.* ¶¶ 14-15.

¶ 26    We further note that in a recent case, *In re Marriage of Moorthy*, 2015 IL App (1st) 132077, ¶¶ 64-65, the reviewing court held that the trial court did not abuse its discretion in determining that the father's proportionate share of the retained earnings from his majority-owned subchapter S corporation should not be imputed to him for purposes of calculating his child support obligations.  In so ruling, the reviewing court noted that the trial court specifically found that the father had done nothing to manipulate his income to minimize his child support obligations.  *Id.* ¶¶ 36, 64.  As such, *Moorthy* is distinguishable as here the trial court's decision indicates that it did believe that Ronald was manipulating his income for purposes of calculating child support.

¶ 27    Ronald's second contention on appeal is that the trial court abused its discretion by not ordering an equitable downward deviation in the final child support award. Ronald insists that the trial court's award of $19,284.48 per month was excessive and created an improper windfall.

¶ 28    The parties again dispute the appropriate standard of review for this issue, with Ronald insisting that our review is *de novo* while Jennifer asserts that it is abuse of discretion. We agree with Jennifer. See *In re Marriage of Scafuri*, 203 Ill. App. 3d 385, 391 (1999) (a trial court's decision whether it should deviate from the statutory guidelines in setting child support will not be disturbed absent an abuse of discretion). The cases that Ronald cites—*Anderson v. Heckman*, 343 Ill. App. 3d 449 (2003), and *In re Marriage of Demattia*, 302 Ill. App. 3d 390 (1990)—do not support his argument. In *Anderson*, the reviewing court used the *de novo* standard of review to determine whether section 505 should apply at all in child support modification proceedings. *Anderson*, 343 Ill. App. 3d at 452. After determining that section 505 did apply, the reviewing court analyzed whether the trial court had abused its discretion by not stating its reasons for a downward deviation. *Id.* at 453. In *Demattia*, the reviewing court used the *de novo* standard of review to determine whether the child support guidelines apply to cases where the nonresidential parent has extended visitation. *Demattia*, 302 Ill. App. 3d at 393. After determining that the guidelines did apply, the trial court then analyzed whether the trial court abused its discretion by not deviating downward from the guideline support. *Id.* at 394. Thus, despite Ronald's protests to the contrary, both *Anderson* and *Demattia* indicate that a trial court's decision whether to deviate from the statutory guidelines in setting child support will not be disturbed absent an abuse of discretion.

¶ 29    Turning to the merits of Ronald's second argument, the statutory guidelines contained in section 505 of the Dissolution Act (750 ILCS 5/505 (West 2012)) create a rebuttable

presumption that child support in the guideline amount is appropriate. *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 902 (1999). The proponent of a deviation from the guidelines bears the burden of producing evidence that compelling reasons exist to justify the deviation. *Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747, 752 (1998).

¶ 30 A trial court is justified in awarding child support below the guideline amount where the parties' incomes are more than sufficient to provide for the reasonable needs of the parties' children. See *In re Marriage of Lee*, 246 Ill. App. 3d 628, 643 (1993). However, the trial court is not required to do so. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 707 (2006). When dealing with a parent who has a high income, the trial court must balance the concerns that (1) a child support award should not be a windfall and (2) the standard of living that the children would have enjoyed absent the dissolution should be maintained. *In re Marriage of Charles*, 284 Ill. App. 3d 339, 347 (1996). In light of the standard of living that the children would have enjoyed, child support is not to be based solely upon their shown needs. *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 36 (1997).

¶ 31 After reviewing the record, we do not believe that the trial court's failure to deviate downward from the statutory guidelines constituted an abuse of discretion. The record reveals that Ronald had a home in Naperville, two vacation homes, seven cars, and over $1 million in savings. He also had a job with an annual salary of up to $500,000. The trial court could have reasonably determined that, had the parties stayed married, the children would have enjoyed a high standard of living. The trial court could therefore have rationally concluded that adhering to the statutory guidelines was the best way to replicate the standard of living that the children would have enjoyed had the parties stayed married. See *id.* Accordingly, we decline to disturb the trial court's award of child support.

¶ 32    Ronald's final contention on appeal is that the trial court erred in ordering that he contribute $49,025.04 toward Jennifer's attorney fees pursuant to section 508(a) of the Dissolution Act.  750 ILCS 5/508(a) (West 2012).  Ronald argues that, as Jennifer currently receives monthly child support of $19,284.48, and received retroactive child support of $337,478, she has ample ability to pay her own fees.  We review a trial court's award of attorney fees under the abuse-of-discretion standard.  *In re Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 37.

¶ 33    Ronald cites *In re Marriage of Schinelli*, 406 Ill. App. 3d 991, 996 (2011), for the proposition that the maintenance paid to a spouse may be considered as part of that spouse's income when considering the parties' relative financial circumstances and whether the requesting spouse is unable to pay his or her own attorney fees.  *Schinelli* did not, however, consider child support as income to the receiving spouse; to the contrary, child support generally should not be considered as income in this context.  *Sobieski*, 2013 IL App (2d) 111146, ¶ 47 (child support payments could not be factored into whether custodial parent could pay her own attorney fees, as those monies were for child support and not for the parent's personal use or payment of attorney fees (citing *In re Keon C.*, 344 Ill. App. 3d 1137, 1147 (2003))).  Although Ronald asks that we depart from *Sobieski*, we decline to do so.

¶ 34    Here, when child support is not considered, Jennifer's gross income when she was employed was $35,000 per year, while Ronald's income (net after all applicable deductions) was in excess of $800,000.  Thus, their incomes are not equal.  Moreover, our court has recently noted that *Schinelli* relied on older case law in looking solely to the parties' incomes and assets in determining "inability to pay," while the current version of section 508(a) requires a court to consider all of the various statutory factors contained in sections 503(j) and 504 of the

Dissolution Act (750 ILCS 5/503(j), 504 (West 2012)), relating to the distribution of marital property and the award of maintenance. See *Sobieski*, 2013 IL App (2d) 111146, ¶ 49 (noting this reliance on older case law and that the phrase "inability to pay" does not appear in the current version of section 508(a)). Further, as Illinois courts have recognized, a spouse need not show that he or she is destitute in order to justify an award of attorney fees. *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005); *In re Marriage of Pond*, 379 Ill. App. 3d 982, 987 (2008).

¶ 35   Here, as the trial court properly considered all of the relevant statutory factors in determining the award of attorney fees, we find no abuse of discretion in that award.

¶ 36                         CONCLUSION

¶ 37   For the foregoing reasons, the judgment of the circuit court of Kendall County is affirmed.

¶ 38   Affirmed.